915 So.2d 1155 (2004)
DIRECTOR, STATE DEPARTMENT OF INDUSTRIAL RELATIONS
v.
GULF CARIBE MARITIME, INC.
Gulf Caribe Maritime, Inc.
v.
Director, State Department of Industrial Relations.
2020565.
Court of Civil Appeals of Alabama.
May 14, 2004.
Order Overruling Application for Rehearing and Specially Concurring Opinion July 23, 2004.
*1156 Frank D. Marsh, gen. counsel and special asst. atty. gen., and Glenn Chaffin, asst. gen. counsel and special asst. atty. gen., for appellant/cross-appellee Director, State of Alabama Department of Industrial Relations.
Gregory C. Buffalow of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, for appellee/cross-appellant Gulf Caribe Maritime, Inc.
PER CURIAM.
This is an unemployment-compensation case.
*1157 On December 17, 2001, William Welch, a seaman most recently employed by Gulf Caribe Maritime, Inc. ("the employer"), filed a claim with the Department of Industrial Relations ("DIR") seeking unemployment-compensation benefits. Shortly thereafter, a claims examiner for DIR determined that Welch was eligible for unemployment-compensation benefits. On January 14, 2002, the employer sought administrative review of the claims examiner's decision before a DIR appeals tribunal (see § 25-4-92, Ala.Code 1975). Following a hearing on the matter on March 13, 2002, the DIR appeals tribunal determined that Welch was entitled to benefits through January 13, 2002, but that he was thereafter disqualified from receiving benefits under § 25-4-78(4), Ala.Code 1975, for failure to renew his license, certificate, or permit for employment. The employer subsequently applied for leave to appeal to the DIR's Board of Appeals ("the Board") (see § 25-4-94, Ala.Code 1975). The Board denied the employer's application on April 19, 2002.
On April 23, 2002, the employer sought judicial review of DIR's decision. On October 10, 2002, the employer moved the court to consolidate the present case with that of another unemployment-compensation claimant, Jerome Smith. The employer argued that the issue in both cases was essentially the same (i.e., "whether a seaman on approved vacation time pursuant to a collective bargaining agreement, negotiated by the [Seafarers International Union of North America], is disqualified from unemployment benefits by operation of law, including § 25-4-78(2)a.4.[, Ala.Code 1975]". On November 8, 2002, the employer moved for a summary judgment as to the claims asserted by both Welch and Smith. On February 12, 2003, the trial court entered an order granting the employer's motion for a summary judgment and directing the employer to prepare an appropriate judgment form. On March 11, 2003, the trial court stated its findings of fact and conclusions of law as follows:
"This matter came on for consideration of the motion for summary judgment filed by Gulf Caribe Maritime, Inc., in connection with the referenced appeals involving unemployment benefits. After a careful consideration of the briefs, exhibits and arguments of counsel, the court enters the following decision and order.
"FINDINGS OF FACT
"The following are the undisputed facts which have been determined from the evidence and exhibits, and from interrogation of counsel.
"1. Claimants are William Welch and Jerome Smith who were, at all times material, seamen employees of Gulf Caribe Maritime, Inc., who were employed aboard the ocean going vessel DELTA MARINER.
"2. Gulf Caribe Maritime, Inc., is a Washington corporation, with offices and a principal place of business in Mobile, Alabama.
"3. The Court has jurisdiction of this action and the parties based on timely appeals from adverse rulings from the Alabama Department of Industrial Relations.
"4. Both claimants filed for, and received, unemployment benefits during a period which constituted scheduled time off pursuant to a collective bargaining agreement which defined the relevant work periods and other terms of employment for crew on the DELTA MARINER.
"5. The relevant provisions of the collective bargaining agreement have been filed with the court and summarized in the affidavit testimony from *1158 Mr. Bobby Pepper, President of the [employer].
"6. The terms of employment in the agreement defined a specific work/relief schedule, which provided for regular periods of off time for thirty days known as `swing time.' According to [Pepper]:
"`In the Agreement, scheduled time off for the seventeen (17) crewm[e]n aboard the DELTA MARINER is referred to as "swing time," and the duration of employment for crew is defined as a period of continuous employment aboard the vessel DELTA MARINER, followed by a regularly scheduled time off period for 30 days. See, page 29 of the Agreement and attached Addendum. The Addendum is attached hereto and identified as `Exhibit B.' In other words, instead of scheduling the crew to work for 5 days on, and a weekend period for 2 days off, as i[s] done for many land based workers, the crew is scheduled to work for a period aboard the vessel, and the employee, in effect, takes all of his weekend days consecutively for the subsequent 30 day period.'
". . . .
"7. The employees were not fired or laid off during the scheduled break, and other forms of compensation were continued during this `swing time' including health and union benefits (Pepper Affidavit, Par. 7).
"8. The employees were not seeking other employment during the `swing time' or vacation period.
"9. All parties have agreed that a purely legal issue is presented, viz: whether various seamen, employed on the DELTA MARINER, were entitled to unemployment benefits for a period of scheduled time off, based on the work schedule which was set by [a] collective bargaining agreement.
"10. Claimants have been represented in this matter by counsel for [DIR], and the court has considered the briefs and arguments of all parties and their counsel.
"CONCLUSIONS OF LAW
"11. The court must determine, as a threshold issue, whether the claimants were discharged during the period of time in which benefits were awarded.
"12. Alabama unemployment benefits are unavailable in the situation presented where the affected employee was not discharged. The Alabama courts have long held `the purpose of the unemployment compensation law is to provide a worker with funds to avoid a period of destitution because of the loss of employment. Its goal is to sustain the worker while he looks for other employment.' Arrow Company v. State, Department of Industrial Relations, 370 So.2d 1013 [(Ala.Civ.App.1979)] (teachers are not discharged during three month summer vacation).
"13. Because neither of the employees was discharged, the statute is inapplicable.
"14. The Alabama unemployment benefits statutes also have an express provision dealing with the situation presented here in which benefits are claimed during an established leave period based on a collective bargaining agreement. [Ala.Code 1975, § 25-4-78(2)a.4.] The language of this statute is clear that nothing in the Act authorizes payment of benefits during the period of an established leave of absence policy or during leave established by union contract. Id.

*1159 "15. The rationale for § 25-4-78(2)a.4 is the fact that the claimant continues to have a job at the expiration of the leave period. The following provisions in the statute are, therefore, dispositive of the issue presented with respect to the `swing time' provisions in the Gulf Caribe agreement:
"`Nothing herein shall be construed or interpreted as authorizing the payment of benefits to any person during, or for, unemployment due to sickness or disability or during any period in which he is on a leave of absence granted in accordance with an established leave-of-absence policy, the duration of which was set in accordance with his request or in accordance with a collective bargaining agreement.. . .'
"[Ala.Code 1975,] § 25-4-78(2)a.4. (Emphasis added.)
"16. The thirty (30) day `swing time' period in the subject agreement is, therefore, scheduled time off and the quoted provisions of the Alabama statute makes clear that it does not trigger entitlement to benefits.
"17. Based on the foregoing, the claimants, William Welch and Jerome Smith, were not entitled to unemployment benefits during the `swing time' period defined in the Gulf Caribe contract because they are receiving `other forms' of compensation in the form of health and union benefits. Consequently, the continuation of health and union benefits and the quoted `swing time' provisions are sufficient to demonstrate, as a matter of law, that the claimants were not involuntarily unemployed.
"18. According to Alabama law, the purposes of the unemployment laws are not served by awarding benefits to claimants who have received `other forms of compensation' during scheduled time off.
"`The purpose of the Act is not served by the payment of benefits to a claimant who is receiving certain other forms of compensation, such as vacation pay, although he is not in the ordinary sense of the word employed.'
"[Director of Dep't of Indus. Relations v.] Butler, 367 So.2d [496,] 499 [(Ala.Civ.App.1979)] ([emphasis] supplied).
"18. The rationale for disqualification from benefits during such scheduled time off is that the designated vacation period was `voluntary unemployment provided for in the contract. . . .' See, Grobe v. Board of Review, 409 Ill. 576, 101 N.E.2d 95 (1951). The voluntary nature of the unemployment as a disqualifying event is also reflected in the Alabama statute which disqualifies an individual for voluntarily quitting work, § 25-4-78(2), and is addressed in the analogous Butler decision, quoted above, in which the Alabama court denied benefits during vacation periods (regardless of receipt of pay or other forms of compensation) because `the basic purpose of the Unemployment Compensation Act . . . is to provide funds to an involuntarily unemployed worker. . . .'. . . Butler, 367 So.2d at 499.
"20. The court having determined that Welch and Smith are not entitled to benefits under the described circumstances, any further declaration of the rights of the parties is not necessary.
"21. The determinations of [DIR] awarding benefits to claimants William Welch and Jerome Smith, from which appeal has been taken, should be and the same is HEREBY REVERSED, and the court HEREBY ENTERS summary judgment in favor *1160 of the appellant, Gulf Caribe, that no unemployment benefits were payable during the `swing time' period as defined by contract.
"22. The law applicable to this situation has been uncertain and, since appellant has been relieved of future payments, the court does not order repayment of benefits previously paid."
DIR appealed from the trial court's judgment to this court. The employer cross-appealed, claiming that the court erred in failing to require repayment of benefits it had paid to Welch and Smith. However, the employer failed to supply this court with any argument as to its cross-appeal regarding repayment of benefits paid. Therefore, we affirm the trial court's judgment as to that issue (see Cain v. Howorth, 877 So.2d 566, 581 (Ala.2003), and Rule 28(a), Ala. R.App. P.), and we address only DIR's appeal on the merits.
"An appellate court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion. Pryor v. Brown & Root USA, Inc., 674 So.2d 45, 47 (Ala.1995); Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). A summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact. Id. In determining whether the evidence creates a genuine issue of material fact, this court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala.1993). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'"
Millican v. McKinney, 886 So.2d 841, 843 (Ala.Civ.App.2003) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
Among other issues, DIR argues that the trial court erred in entering a summary judgment in favor of the employer because, DIR says, that court erred in determining that Welch and Smith were disqualified from receiving benefits because they had left work pursuant to an established leave-of-absence policy (i.e., the 30-day "swing time" period) contained in the collective-bargaining agreement. The record reflects that the collective-bargaining agreement entered into between Welch and Smith's union and the employer, which applied to Welch's and Smith's employment with the employer, provides, in pertinent part:
"C. Swing Time
"1. After completion of sixty (60) days of employment each crewmember shall take thirty (30) days time off as appropriate, based on one day off for every two (2) days worked.
"2. Employment shall not be compensated for time taken off. Where mutually agreeable between the Company [i.e., the employer] and the Union, shorter or longer days['] work periods may be arranged to better fit the vessel[']s normal schedule."
*1161 In 1971, the Alabama Legislature amended Title 26, § 214, Ala.Code 1940 (Recomp.1958) (the statutory predecessor of Ala.Code 1975, § 25-5-78(2)), which governed disqualification from unemployment-compensation benefits arising from voluntary separations from work. Since that amendment, Alabama's unemployment-compensation law has provided, in pertinent part:
"[n]othing herein shall be construed or interpreted as authorizing the payment of benefits to any person during . . . unemployment due to sickness or disability or during any period in which he is on a leave of absence granted in accordance with an established leave-of-absence policy, the duration of which leave was set in accordance with . . . a collective bargaining agreement."
Ala.Code 1975, § 25-4-78(2)a.4. (emphasis added). In its summary judgment, the trial court opined that statutory language was "dispositive of the issue presented with respect to the `swing time' provisions" in the parties' collective-bargaining agreement, and, relying on that statute, that court interpreted the 30-day "swing time" period as "scheduled time off" under an established leave-of-absence policy that could not trigger an award of benefits.
DIR contends that § 25-4-78(2), Ala.Code 1975, disqualifies a claimant from receiving unemployment compensation only as to leave-of-absence policies relating to illness. Although it is true that this court must generally give an administrative agency's interpretation of a statute that agency enforces "`great weight' and `favorable consideration,'" such an administrative interpretation "must be laid aside where it seems reasonably certain that it has been erroneous and that the language of the statute requires a different construction." Alabama Sec. Comm'n v. American Bus. Club, 612 So.2d 1237, 1239 (Ala.Civ.App.1992).
We note that Ala.Code 1975, § 25-4-78(2)a.4., is phrased in the disjunctive. DIR correctly contends that section does indicate an intent to disqualify a claimant from receiving benefits when the claimant's unemployment has arisen "due to sickness or disability." However, § 25-4-78(2)a.4. also indicates an intent to disqualify a claimant from receiving unemployment benefits when the claimant's unemployment has arisen during "any period in which [the claimant] is on a leave of absence granted in accordance with an established leave-of-absence policy" when the length of that leave is set in accordance with a collective-bargaining agreement. In our view, a fair reading of Alabama's unemployment-compensation law as currently in effect indicates an intent to bar the payment of benefits based upon collectively bargained leaves of absence such as those taken by the claimants during the "swing times" in this case.
DIR also contends that the collective-bargaining agreement constitutes a statutorily prohibited waiver of rights to unemployment benefits. DIR relies upon § 25-4-138, Ala.Code 1975, which generally deems agreements to "waive or release [an employee's] rights" to unemployment-compensation benefits as void, and Director, State Department of Industrial Relations v. Alabama By-Products, Inc., 374 So.2d 344 (Ala.Civ.App.1979), as authority for its contention that the collective-bargaining agreement between the employer and Welch and Smith's union could not properly be interpreted as barring Welch and Smith from obtaining unemployment compensation.
In Alabama By-Products, a coal miner's labor union and the miner's employer entered into a collective-bargaining agreement to the effect that the employer's *1162 mine in which the miner was working would be closed during a two-week period near Independence Day 1975 and that all employees would receive vacation pay commensurate with the length of their employment. However, the miner only received two days' worth of pay (i.e., one day's vacation pay and one day's pay for the Independence Day holiday) because he had only worked for three months preceding the scheduled closure; he then applied for an award of unemployment compensation. The employer contested the miner's application, contending that the terms of the collective-bargaining agreement deemed the closure a voluntary temporary departure from work, and the employer appealed to the circuit court from DIR's award of benefits; the claimant's award of benefits from DIR was overturned by the circuit court. 374 So.2d at 345-46.
This court reversed the circuit court's judgment, relying principally upon the construction of § 25-4-138 the former Court of Appeals had adopted in Reynolds Metals Co. v. Thorne, 41 Ala.App. 331, 133 So.2d 709 (1961), to the effect that a collective-bargaining agreement could not properly be relied upon to disqualify a claimant for benefits under the theory that he had voluntarily terminated his employment. Alabama By-Products, 374 So.2d at 346. However, in adhering to the former broad construction of § 25-5-138, this court appears to have ignored the Legislature's intervening amendment of our unemployment-compensation laws to the effect that they should not be construed or interpreted as authorizing the payment of unemployment compensation to claimants "during any period in which [a claimant] is on a leave of absence granted in accordance with an established leave-of-absence policy, the duration of which leave was set in accordance with . . . a collective bargaining agreement." Ala.Code 1975, § 25-4-78(2)a.4. (emphasis added). In other words, Alabama By-Products failed to give effect to the Legislature's 1971 rejection of Reynolds Metals in the specific area of collectively bargained leave-of-absence policies. To the extent that Alabama By-Products is in conflict with § 25-4-78(2)a.4., it is overruled.
In this case, the undisputed facts show that the claimants' labor union, the Seafarers International Union of North America, entered into a collective-bargaining agreement with the employer under which 60 days of work for the employer will be followed by 30 days of time off. Ala.Code 1975, § 25-4-78(2)a.4., expressly recognizes the power of employers and unions to enter into valid collective-bargaining agreements establishing such leave-of-absence policies. Construing, as we must, that portion of Alabama's unemployment-compensation law in pari materia with § 25-4-138, another portion of that law (see Ex parte State ex rel. Daw, 786 So.2d 1134, 1136 (Ala.2000)), we conclude that the trial court correctly rejected DIR's contention that the collective-bargaining agreement amounted to a prohibited prospective waiver of unemployment-compensation benefits.
In light of the foregoing, the summary judgment in favor of the employer is due to be affirmed. We need not reach the employer's alternative arguments in favor of affirmance, such as its contention that the employees were not "discharged" from employment under the unemployment-compensation laws or that DIR has now adopted the employer's interpretation of § 25-4-78(2)a.4. See Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988) (trial court's judgment is due to be affirmed if it is supported by any valid legal ground).
AFFIRMED.
*1163 CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
YATES, P.J., dissents, with writing.
YATES, Presiding Judge, dissenting.
The primary issue in this case is whether William Welch and Jerome Smith ("the claimants") were unemployed within the meaning of § 25-4-71, Ala.Code 1975, during the one-month "swing time" period provided for in the collective bargaining between the claimants' union and their employer following a two-month work period aboard an ocean-going vessel.[1]
The trial court, relying on Arrow Co. v. State Department of Industrial Relations, 370 So.2d 1013 (Ala.Civ.App.1979), determined that Alabama's unemployment-compensation statute was inapplicable to the present case because the claimants were not discharged (i.e., the employer-employee relationship continued) during the "swing time" period. The trial court apparently also relied on Hale v. Cullman County Board of Education, 465 So.2d 1143 (Ala.Civ.App.1984).
As the Department of Industrial Relations ("DIR") argues, the trial court's reliance on Arrow and Hale is misplaced. This court refused to award unemployment compensation in those cases; however, that refusal was not based on the continuation, or lack thereof, of an employer-employee relationship. In Arrow, the claimant, an Albertville plant employee, entered into a collective-bargaining agreement with her employer that required the employer to schedule a one-week winter vacation during the last two weeks of December. Under the agreement, the claimant was entitled to receive vacation pay during that period, including double compensation for any holidays occurring during the vacation period. The employer scheduled the vacation beginning December 25 and ending December 31. However, the employer subsequently decided to close the plant beginning December 23 and ending January 5. On December 20, the claimant received her one-week, winter-vacation pay, including holiday pay for Christmas and New Year's Day. However, she did not receive pay for four days outside of the winter-vacation period during which the plant was closed. The claimant sued, arguing that the employer could not institute a shutdown during a vacation period so as to deny her the right to unemployment-compensation benefits. The Unemployment Compensation Agency denied the claimant benefits because she had received pay in excess of the weekly benefit amount permitted under § 25-4-72, Ala.Code 1975. The trial court reversed the agency's decision and awarded the claimant benefits. The employer appealed to this court. This court, despite finding that the claimant was unemployed, disqualified her from receiving unemployment-compensation benefits because the wages (i.e., vacation pay) she had received from the employer during the two-week *1164 shutdown exceeded the weekly benefit amount available to her under the unemployment-compensation statute.
In Hale, the claimant, a teacher, had contracted with the school board to work a nine-month school term while receiving payments over a twelve-month period. At the close of the 1975-1976 school year, the claimant's contract was not renewed. She sued for unemployment compensation benefits for the remainder of the calendar year, although she continued to receive pay during the same period of time. DIR denied the claimant benefits. The circuit court subsequently affirmed DIR's decision, and the claimant appealed to this court. This court affirmed the trial court, finding that the claimant, who had received her normal wages during the remaining three months of her contract, was not "unemployed" within the meaning of § 25-4-71, which requires that a claimant either receive no wages or wages that were less than her weekly benefit amount available under the unemployment-compensation statute.
DIR asserts that because the claimants in the present case, irrespective of the existence of a employer-employee relationship, received no wages during the one-month "swing time" period, they were unemployed. See Director, Department of Indus. Relations v. Alabama By-Products, Inc., 374 So.2d 344, 347 (Ala.Civ.App.1979). I agree.
Section 25-4-71, Ala.Code 1975, provides:
"An individual shall be deemed totally unemployed in any week during which he performs no services and with respect to which no wages are payable to him, and shall be deemed partially unemployed in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount. The director shall prescribe regulations applicable to unemployed individuals, making such distinctions in the procedures as to total unemployment, part-total unemployment, partial unemployment of individuals attached to their regular jobs and other forms of short-time work, as the director deems necessary. Wages are deemed to be payable to an individual working on a commission basis with respect to each week in which he works."
The record indicates that throughout their employment with Gulf Caribe both claimants adhered to the collective-bargaining agreement, working and subsequently departing the vessel during "swing time." The claimants performed no services for Gulf Caribe and received no wages from the company during the "swing time" period. Despite the claimants' having adhered to the provisions of the collective-bargaining agreement, the statute is clear on its face that an individual is totally unemployed in a week in which he receives no pay and in which he performs no services. Further, the Alabama Legislature has made no exception for maritime employees with respect to determining when a period of unemployment begins.[2] Therefore, I conclude that the claimants were unemployed within the meaning of § 25-4-71, Ala.Code 1975.
Having determined that the claimants were unemployed within the meaning of § 25-4-71, Ala.Code 1975, I next turn to whether the trial court erred in determining that the claimants were disqualified *1165 from receiving unemployment-compensation benefits.
The main opinion holds that the trial court was correct in its determination that the claimants were disqualified from receiving benefits because they had left work pursuant to an established leave-of-absence policy (i.e., the 30-day "swing time" period) contained in the collective-bargaining agreement.
In its order entering a summary judgment in favor of the employer, the trial court noted that § 25-4-78(2)a.4., Ala.Code 1975, was "dispositive of the issue presented with respect to the `swing time' provisions in the Gulf Caribe agreement." The trial court interpreted the 30-day "swing time" period as "scheduled time off" under an established leave-of-absence policy and that, therefore, it could not trigger an award of benefits. I disagree.
Section 25-4-78(2) provides:
"2) Voluntarily Quitting Work. If he has left his most recent bona fide work voluntarily without good cause connected with such work.
"a.1. However, he shall not be disqualified if he was forced to leave work because he was sick or disabled, notified his employer of the fact as soon as it was reasonably practicable so to do, and returned to that employer and offered himself for work as soon as he was again able to work; provided, however, this exception shall not apply if the employer had an established leave-of-absence policy covering sickness or disability and:
"(i) The individual fails to comply with same as soon as it is reasonably practicable so to do; or
"(ii) Upon the expiration of a leave of absence shall fail to return to said employer and offer himself for work, if he shall then be able to work, or if he is not then able to work, he fails to so notify his employer of that fact and request an extension of his said leave of absence as soon as it is reasonably practicable so to do.
"2. In case of doubt that an individual was sick or disabled, or as to the duration of any such sickness or disability, the director may, or if the employer requests it, the director shall require a doctor's certificate to establish the fact or facts in doubt.
"3. An established leave-of-absence policy shall be any leave-of-absence policy covering sickness and disability communicated to the employee by the customary means used by the employer for communicating with his employees.
"4. Nothing herein shall be construed or interpreted as authorizing the payment of benefits to any person during, or for, unemployment due to sickness or disability or during any period in which he is on a leave of absence granted in accordance with an established leave-of-absence policy, the duration of which leave was set in accordance with his request or in accordance with a collective bargaining agreement; except, that if such leave of absence is on account of pregnancy and extends beyond the tenth week following termination of such pregnancy, the individual shall not be denied benefits under the provisions of this subdivision (2) beyond such tenth week if she has given the employer three weeks notice of her desire to return to work, is then able to work and has not refused reinstatement to a job which under the provisions of subdivision (5) of this section would be deemed suitable for her."
Contrary to the trial court's position that "the language of [§ 25-4-78(2)a.4., *1166 Ala.Code 1975,] is clear [and] that nothing in the statute authorizes payment of benefits during the period of an established leave of absence policy or during leave established by union contract," § 25-4-78(2), Ala.Code 1975, disqualifies a claimant from the receipt of unemployment-compensation benefits for leave-of-absence policies relating to illness, not leave-of-absence policies in general. The Legislature defined "established leave-of-absence policy" in § 25-4-78(2)a.3. as "any leave-of-absence policy covering sickness and disability." The plain meaning of this definition restricts disqualification from receipt of unemployment benefits to employees requesting a leave of absence due to sickness or disability. The trial court and the main opinion have taken the phrase in § 25-4-78(2)a.4. regarding "an established leave of absence policy, the duration of which was set in accordance with . . . a collective bargaining agreement" out of context from the remainder of § 25-4-78(2). "In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature." DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998). "Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive." Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala.1996). Accordingly, the claimants, who were required to leave their employ on a periodic basis, are not subject to disqualification under § 25-4-78(2).
I do not agree with the main opinion's overruling of Alabama By-Products based on its conclusion that the Legislature, by amending Title 26, § 214, Ala.Code 1940 (Recomp.1958), in 1971, was rejecting the Court of Appeals' holding in Reynolds Metals Co. v. Thorne, 41 Ala.App. 331, 133 So.2d 709 (1961), regarding whether a collective-bargaining agreement could be relied upon to disqualify a claimant for benefits under the theory that he had voluntarily terminated his employment. The issue in Reynolds Metals was whether an employee who was forced to retire pursuant to a collective-bargaining agreement was disqualified from receiving unemployment compensation. The 1971 amendment to Title 26, § 214 (the predecessor to § 25-4-78), concerns collective-bargaining agreements in relation to "established leave-of-absence" policies relating to sickness or disability.[3] Moreover, the Legislature did not amend Title 26, § 244 (the predecessor to § 25-4-138), which provides that any agreement by an employee to waive or release his rights to unemployment-compensation benefits is void.
Although the main opinion affirms the summary judgment based on disqualification pursuant to § 25-4-78(2), DIR raises other issues on appeal, which I will address. DIR argues that the trial court erred in determining that the claimants had received compensation that would disqualify them from the receipt of unemployment-compensation benefits. In particular, DIR asserts that the trial court's delineation of "health and unions benefits"[4] provided to the claimants as compensation *1167 did not serve to disqualify the claimants from receiving unemployment compensation. I agree.
Section 25-4-16(b), Ala.Code 1975, defines wages as "every form of remuneration paid or received for personal services, including the cash value of any remuneration paid in any medium other than cash." However, § 25-4-16(b) provides that "wages" shall not include:
"(2) The amount of any payments (including any amount paid by an employer for insurance or annuities, or into a fund to provide for any such payment) made to, or on behalf of an employee . . . on account of:
"a. Retirement; or
"b. Sickness or accident disability; or
"c. Medical or hospitalization expenses in connection with sickness or accident disability; or
"d. Death."
The trial court, relying upon this court's rationale in Director of Department of Industrial Relations v. Butler, 367 So.2d 496 (Ala.Civ.App.1979), determined that the claimants had received "other forms of compensation" in the form of insurance and union benefits/retirement benefits that disqualified them from receiving unemployment compensation. The "other form" of compensation referred to in Butler was the vacation pay received by a claimant who had elected to take a 10-week vacation with pay during a period of forced layoff. 367 So.2d at 498. The record in the present case reflects that the claimants did receive insurance benefits and union benefits/retirement benefits from Gulf Caribe during the "swing time" period. However, the statute clearly prohibits the consideration of those benefits as disqualifying factors for the receipt of unemployment compensation. Moreover, this court has stated that "`[w]ages,' with certain express statutory exceptions, [do] not . . . include remuneration which an employer is under no legal obligation to make." State Dep't of Indus. Relations v. Deslattes, 372 So.2d 867, 869 (Ala.Civ.App.1979). Clearly, Gulf Caribe was under no legal obligation to provide such benefits to the claimants. Therefore, I conclude that the receipt of such benefits did not serve to disqualify the claimants from receiving unemployment-compensation benefits.
DIR also argues that the trial court erred in its determination that the claimants were disqualified from receiving unemployment-compensation benefits for their failure to seek employment during the "swing time" period because, DIR asserts, that issue was never before the court. In the alternative, DIR argues that even if the trial court properly determined that the claimants did not seek employment during the "swing time" period, they were not required to do so.
Section 25-4-77(a)(5), Ala.Code 1975, provides:
"(a) An unemployed individual shall be eligible to receive benefits . . . if the director finds that: . . . (5) He has made a reasonable and active effort to secure work which he is qualified to perform by past experience and training. . . ."
However, Ala. Admin. Code (DIR) Rule 480-4-3-.15(2)(a) states:
"If a claimant is on a temporary layoff, the duration of which is not expected to exceed thirteen (13) weeks, or a customary or seasonal layoff from his regular employer, such layoff not expected to *1168 exceed (13) thirteen weeks, no work search is required during such temporary, customary or seasonal layoff as a condition of eligibility. This work search exemption shall not apply unless such layoff is from an employer who normally provides work of a permanent and continuing nature to the claimant. Registration with the Employment Service will not be a requirement."
Contrary to DIR's contention, the record reflects that Gulf Caribe submitted uncontradicted evidence to the court that neither claimant "actively sought" employment during the "swing time" period. However, the record also indicates that the claimants were scheduled to be away from the vessel for 30 days or 4 weeks before returning to work. Therefore, pursuant to Ala Admin. Code (DIR) Rule 480-4-3-.15(a), the claimants were not required to conduct a work search in order to maintain eligibility for unemployment compensation.
Finally, DIR argues that the trial court erred in determining that the collective-bargaining agreement between Gulf Caribe and the claimants' union did not constitute a statutorily prohibitive waiver of the right to unemployment-compensation benefits pursuant to § 25-4-138, Ala.Code 1975.
Section 25-4-138 provides, in part:
"Any agreement by an employee to waive or release his rights to benefits or any other rights under this chapter shall be void. Any agreement by an employee to pay all or any portion of his employer's contributions, required under this chapter from such employer, shall be void."
This court has stated that "a claimant is not disqualified for benefits where, as here, unemployment is not voluntary and self-imposed but is a result of a collective bargain which operates as a waiver of, and excludes him from benefits to which he is otherwise entitled." Alabama By-Products, 374 So.2d at 346.
It is undisputed that the claimants were subject to a collective-bargaining agreement that stipulated that they must leave the vessel for a 30-day period of time after having worked the previous 60-day period. However, absent the existence of the collective-bargaining agreement, which stipulated that the claimants were not to receive compensation for the 30-day "swing time" period, the claimants, who were unemployed within the meaning of § 25-4-71, Ala.Code 1975, and were not otherwise disqualified, were entitled to receive unemployment-compensation benefits.
Accordingly, I must respectfully dissent.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially, with writing, which CRAWLEY, J., joins.
YATES, P.J., dissents, without writing.
MURDOCK, Judge, concurring specially.
The Department of Industrial Relations ("DIR") argues in support of its application for rehearing that the opinion of this court on original deliverance disregarded the statutory definition of an "established leave-of-absence policy" in § 25-4-78(2)a.4., Ala.Code 1975. In essence, this is the same argument made by Presiding Judge Yates in her dissenting opinion on original deliverance. I agree with this argument.
Nonetheless, I concurred in the result upon original deliverance, and I now concur in overruling DIR's application for rehearing. I did so, and do so, because I agree with the reasoning of the trial court *1169 in paragraphs 6, 7, 8, 12, and 13 of the trial court's judgment, as quoted in the main opinion of this court on original deliverance.
Because of the manner in which the payment of wages to the employees was structured, it is true that no wages were received by the employees during the "swing time" period at issue. Under § 25-4-71, Ala.Code 1975, however, the question is whether the employer paid the employee "with respect to" the swing time. I think that is a different question than whether they were paid during the swing-time period at issue. Based on the reasoning outlined in the above-referenced paragraphs of the trial court's judgment, I conclude that the employees did receive wages with respect to the 30 days they were off out of every 90 days. Our unemployment-compensation statutes were not intended to be applicable merely because an employee's regular time off is taken for an extended period once every three months instead of for a shorter period at the end of every week.
CRAWLEY, J., concurs.
NOTES
[1] The collective-bargaining agreement entered into between Welch and Smith's union and Gulf Caribe, the claimants' employer, reads, in part:

"C. Swing Time
"1. After completion of sixty (60) days of employment each crewmember shall take thirty (30) days time off as appropriate, based on one day off for every two (2) days worked.
"2. Employment shall not be compensated for time taken off. Where mutually agreeable between the Company [Gulf Caribe] and the Union, shorter or longer days, work periods may be arranged to better fit the vessels normal schedule."
[2] The Alabama legislature has, however, made an exception as to how to determine a maritime employee's weekly benefit amount; a maritime employee's average quarterly earnings, rather than the amount set out in § 25-4-72, Ala.Code 1975, is used to determine his or her weekly benefit amount. See § 25-4-76, Ala.Code 1975.
[3] The Legislature amended Title 26, § 214, to disqualify employees who were unemployed under an established leave-of-absence policy covering sickness or disability from receiving unemployment-compensation benefits when the duration of the leave was set in accordance with a collective-bargaining agreement. The Legislature, in amending the statute, was recognizing that labor unions and employers negotiate the terms and conditions of a leave-of-absence policy covering sickness or disability, rather than an employee's leave being based on a unilateral leave-of-absence policy established by the employer.
[4] Although the trial court characterizes the "compensation" received by the claimants as "health and union benefits," an affidavit of Bobby Pepper, president of Gulf Caribe, characterizes the same "compensation" as "health and retirement benefits."