HARWOOD, Justice.
This Court granted the petition of the Director of the State Department of Industrial Relations (“DIR”) for a writ of certiorari to review the per curiam opinion by the Court of Civil Appeals affirming the trial court’s summary judgment entered in favor Gulf Caribe Maritime, Inc. (“Gulf Caribe”). Director, State Dep’t of Indus. Rel. v. Gulf Caribe Maritime, Inc., 915 So.2d 1155 (Ala.Civ.App.2004). The summary judgment was entered following Gulf Caribe’s appeal to the trial court of DIR’S determination that unemployment-compensation benefits were payable to two employees of Gulf Caribe — William Welch and Jerome Smith — for periods of time off known as “swing time.” Those periods of time off were established by the collective-bargaining agreement that defined Welch’s and Smith’s employment. Welch and Smith were seamen who routinely worked 60 days of continuous employment onboard the Delta Mariner, an oceangoing vessel owned by Gulf Caribe, followed by a scheduled 30 days of swing time.
Smith and Welch sought unemployment-compensation benefits for their swing time based upon the definition of “total unemployment” found at Ala.Code 1975, § 25-4-71, one of the many statutory sections in Alabama’s legislative scheme providing for unemployment compensation. That section provides:
“An individual shall be deemed totally unemployed in any week during which he performs no services and with respect to which no wages are payable to him, and shall be deemed partially unemployed in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount. The director shall prescribe regulations applicable to unemployed individuals, making such distinctions in the procedures as to total unemployment, part-total unemployment, partial unemployment of individuals attached to their regular jobs and other forms of short-time work, as the director deems necessary. Wages are deemed to be payable to an individual working on a commission basis with respect to each week in which he works.”
A critical aspect of Smith and Welch’s claims for unemployment compensation was that they had received no wages during their swing time. The term “wages” is defined in Ala.Code 1975, § 25-4-16; that section provides, in pertinent part:
“ ‘[WJages,’ as used in this chapter, shall mean every form of remuneration paid or received for personal services, including the cash value of any remuneration paid in any medium other than cash.... The term ‘wages,’ however, shall not include:
[[Image here]]
“(2) The amount of any payments (including any amount paid by an employer for insurance or annuities, or into a fund to provide for any such payment) made to, or on behalf of an employee or any of his dependents under a plan or system established by an employer which makes provisions for his employees generally (or for his employees generally and their dependents) or for a class or classes of his employees (or for a class or classes of his employees and their dependents), on account of:
“a. Retirement; or
“b. Sickness or accident disability; or
*1171 “c. Medical or hospitalization expenses in connection with sickness or accident disability; or
“d. Death; or
“e. Effective January 1, 1996, sick pay wages made by an employer to, or on behalf of, an employee after the expiration of six calendar months following the last calendar month in which the employee worked for such employer.
“(3) Any payment made to an employee (including any amount paid by an employer for insurance or annuities, or into a fund to provide for any such payment) on account of retirement.”
In its motion for a summary judgment, Gulf Caribe presented the affidavit of Bobby Pepper, the president of Gulf Caribe, who explained swing time as follows:
“[Scheduled time off for the seventeen (17) crewmen aboard the Delta Mariner [including Smith and Welch] is referred to as ‘swing time,’ and the duration of employment for crew is defined as a period of continuous employment aboard the vessel Delta Mariner, followed by a regularly scheduled time off period for 30 days. See page 29 of the [collective-bargaining] Agreement and attached Addendum [between Gulf Caribe and Seafarers International Union of North America, Atlantic, Gulf, Lakes and Inland Waters DistricVNMU AFL-CIO].... In other words, instead of scheduling the crew to work for 5 days on, and a weekend period for 2 days off, as is done for many land based workers, the crew is scheduled to work for a period aboard the vessel, and the employee, in effect takes all of his weekend days consecutively for the subsequent 30 day period.”
Paragraph 6 of the trial court’s findings of fact adopted the above-quoted portion of Pepper’s affidavit as correctly defining “ ‘the terms of employment in the [collective-bargaining] agreement.’ ” Gulf Caribe, supra, 915 So.2d at 1158 (quoting paragraph 6 of the trial court’s findings of fact). In paragraphs 7 and 8 of its findings of , fact, the trial court also found:
“ ‘7. [Smith and Welch] were not fired or laid off during the scheduled break, and other forms of compensation were continued during this “swing time” including health and union benefits (Pepper Affidavit, Par. 7).
“ ‘8. [Smith and Welch] were not seeking other employment during the “swing time” or vacation period.’ ”
915 So.2d 1158. Thus, the trial court determined that the terms of Smith and Welch’s employment provided for a regularly repeating work schedule in which their pay period included a duration of continuous employment aboard the vessel and a period of time off — the 30-day “swing time.”
The trial court based the summary judgment for Gulf Caribe on its legal conclusion that unemployment benefits are not available to individuals who have not been discharged. In pertinent part, the trial court’s conclusions of law state:
“ ‘12. Alabama unemployment benefits are unavailable in the situation presented where the affected employee was not discharged. The Alabama courts have long held “the purpose of the unemployment compensation law is to provide a worker with funds to avoid a period of destitution because of the loss of employment. Its goal is to sustain the worker while he looks for other employment.” Arrow Company v. State, Department of Industrial Relations, 370 So.2d 1013 [ (Ala.Civ.App.1979) ] (teachers are not discharged during three month summer vacation).
*1172 “ 13. Because neither of the employees was discharged, the statute is inapplicable.’ ”
915 So.2d at 1158.
Because the trial court determined that the swing-time period for Welch and Smith represented scheduled leave time rather than a discharge from employment, it also presented an alternative rationale for the summary judgment based on the language of Ala.Code 1975, § 25^-78(2)a.4. The pertinent language of that subdivision of § 25-4-78, emphasized for ready identification, and the other pertinent provisions of that Code section are as follows:
“An individual shall be disqualified for total or partial unemployment:
[[Image here]]
“(2) Voluntarily Quitting Work. If he has left his most recent bona fide work voluntarily without good cause connected with such work.
“a.l. However, he shall not be disqualified if he was forced to leave work because he was sick or disabled, notified his employer of the fact as soon as it was reasonably practicable so to do, and returned to that employer and offered himself for work as soon as he was again able to work; provided, however, this exception shall not apply if the employer had an established leave-of-absence policy covering sickness or disability ...
[[Image here]]
“3. An established leave-of-absence policy shall be any leave-of-absence policy covering sickness and disability communicated to the employee by the customary means used by the employer for communicating with his employees.
“4. Nothing herein shall be construed or interpreted as authorizing the payment of benefits to any person during, or for, unemployment due to sickness or disability or during any period in which he is on a leave of absence granted in accordance with an established leave-of-absence policy, the duration of which leave was set in accordance with his request or in accordance with a collective bargaining agreement .... ”
(Emphasis added.)
DIR appealed the summary judgment to the Court of Civil Appeals.[1] In its per curiam opinion, in which Judges Crawley, Thompson, and Pittman concurred and Judge Murdock concurred in the result, that court affirmed the summary judgment on the following rationale:
“DIR contends that § 25-4-78(2), Ala. Code 1975, disqualifies a claimant from receiving unemployment compensation only as to leave-of-absence policies relating to illness. Although it is true that this court must generally give an administrative agency’s interpretation of a statute that that agency enforces ‘ “great weight” and “favorable consideration,” ’ such an administrative interpretation ‘must be laid aside where it seems reasonably certain that it has been erroneous and that the language of the statute requires a different construction.’ Alabama Sec. Comm’n v. American Bus. Club, 612 So.2d 1237, 1239 (Ala.Civ.App.1992).
‘We note that Ala.Code 1975, § 25-4-78(2)a.4., is phrased in the disjunctive. *1173 DIR correctly contends that that section does indicate an intent to disqualify a claimant from receiving benefits when the claimant’s unemployment has arisen ‘due to sickness or disability.’ However, § 25-4-78(2)a.4. also indicates an intent to disqualify a claimant from receiving unemployment benefits when the claimant’s unemployment has arisen during ‘any period in which [the claimant] is on a leave of absence granted in accordance with an established leave-of-absence policy’ when the length of that leave is set in accordance with a collective-bargaining agreement. . In our view, a fair reading of Alabama’s unemployment-compensation law as currently in effect indicates an intent to bar the payment of benefits based upon collectively bargained leaves of absence such as those taken by the claimants during the ‘swing times’ in this case.
“DIR also contends that the collective-bargaining agreement constitutes a statutorily prohibited waiver of rights to unemployment benefits. DIR relies upon § 25-4-138, Ala.Code 1975, which generally deems agreements to ‘waive or release [an employee’s] rights’ to unemployment-compensation benefits as void, and Director, State Department of Industrial Relations v. Alabama By-Products, Inc., 374 So.2d 344 (Ala.Civ.App.1979), as authority for its contention that the collective-bargaining agreement between the employer and Welch and Smith’s union could not properly be interpreted as barring Welch and Smith from obtaining unemployment compensation.
“In Alabama By-Products, a coal miner’s labor union and the miner’s employer entered into a collective-bargaining agreement to the effect that the employer’s mine in which the miner was working would be closed during a two-week period near Independence Day 1975 and that all employees would receive vacation pay commensurate with the length of their employment. However, the miner only received two days’ worth of pay (i.e., one day’s vacation pay and one day’s pay for the Independence Day holiday) because he had only worked for three months preceding the scheduled closure; he then applied for an award of unemployment compensation. The employer contested the miner’s application, contending that the terms of the collective-bargaining agreement deemed the closure a voluntary temporary departure from work, and the employer appealed to the circuit court from DIR’s award of benefits; the claimant’s award of benefits from DIR was overturned by the circuit court. 374 So.2d at 345-46.
“This court reversed the circuit court’s judgment, relying principally upon the construction of § 25-4-138 the former Court of Appeals had adopted in Reynolds Metals Co. v. Thorne, 41 Ala.App. 331, 133 So.2d 709 (1961), to the effect that a collective-bargaining agreement could not properly be relied upon to disqualify a claimant for benefits under the theory that he had voluntarily terminated his employment. Alabama By-Products, 374 So.2d at 346. However, in adhering to the former broad construction of § 25-5-138, this court appears to have ignored the Legislature’s intervening amendment of our unemployment-compensation laws to the effect that they should not be construed or interpreted as authorizing the payment of unemployment compensation to claimants ‘during any period in which [a claimant] is on a leave of absence granted in accordance with an established leave-of-absence policy, the duration of which leave was set in accordance with ... a collective bargaining agreement.’ *1174 Ala.Code 1975, § 25-4-78(2)a.4. (emphasis added). In other words, Alabama By-Products failed to give effect to the Legislature’s 1971 rejection of Reynolds Metals in the specific area of collectively bargained leave-of-absence policies. To the extent that Alabama By-Products is in conflict with § 25-4-78(2)a.4., it is overruled.
“In this case, the undisputed facts show that the claimants’ labor union, the Seafarers International Union of North America, entered into a collective-bargaining agreement with the employer under which 60 days of work for the employer will be followed by 30 days of time off. Ala.Code 1975, § 25-4-78(2)a.4., expressly recognizes the power of employers and unions to enter into valid collective-bargaining agreements establishing such leave-of-absence policies. Construing, as we must, that portion of Alabama’s unemployment-compensation law in pari materia with § 25-4-138, another portion of that law (see Ex parte State ex rel. Daw, 786 So.2d 1134, 1136 (Ala.2000)), we conclude that the trial court correctly rejected DIR’s contention that the collective-bargaining agreement amounted to a prohibited prospective waiver of unemployment-compensation benefits.”
915 So.2d at 1161-62.
Presiding Judge Yates dissented from the opinion and countered the majority’s rationale as follows:
“The trial court, relying on Arrow Co. v. State Department of Industrial Relations, 370 So.2d 1013 (Ala.Civ.App.1979), determined that Alabama’s unemployment-compensation statute was inapplicable to the present ease because the claimants were not discharged (i.e., the employer-employee relationship continued) during the ‘swing time’ period. The trial court apparently also relied on Hale v. Cullman County Board of Education, 465 So.2d 1143 (Ala.Civ.App.1984).
“As the Department of Industrial Relations (‘DIR’) argues, the trial court’s reliance on Arrow and Hale is misplaced. This court refused to award unemployment compensation in those cases; however, that refusal was not based on the continuation, or lack thereof, of an employer-employee relationship. In Arrow, the claimant, an Al-bertville plant employee, entered into a collective-bargaining agreement with her employer that required the employer to schedule a one-week winter vacation during the last two weeks of December. Under the agreement, the claimant was entitled to receive vacation pay during that period, including double compensation for any holidays occurring during the vacation period. The employer scheduled the vacation beginning December 25 and ending December 31. However, the employer subsequently decided to close the plant beginning December 23 and ending January 5. On December 20, the claimant received her one-weék, winter-vacation pay, including holiday pay for Christmas and New Year’s Day. However, she did not receive pay for four days outside of the winter-vacation period during which the plant was closed. The claimant sued, arguing that the employer could not institute a shutdown during a vacation period so as to deny her the right to unemployment-compensation benefits. The Unemployment Compensation Agency denied the claimant benefits because she had received pay in excess of the weekly benefit amount permitted under § 25-4-72, Ala.Code 1975. The trial court reversed the agency’s decision and awarded the claimant benefits. The employer appealed to this court. This court, despite finding that the *1175 claimant was unemployed, disqualified her from receiving unemployment-compensation benefits because the wages (i.e., vacation pay) she had received from the employer during the two-week shutdown exceeded the weekly benefit amount available to her under the unemployment-compensation statute.
“In Hale, the claimant, a teacher, had contracted with the school board to work a nine-month school term while receiving payments over a twelve-month period. At the close of the 1975-1976 school year, the claimant’s contract was not renewed. She sued for unemployment compensation benefits for the remainder of the calendar year, although she continued to receive pay during the same period of time. DIR denied the claimant benefits. The circuit court subsequently affirmed DIR’s decision, and the claimant appealed to this court. This court affirmed the trial court, finding that the claimant, who had received her normal wages during the remaining three months of her contract, was not ‘unemployed’ within the meaning of § 25-4-71, which requires that a claimant either receive no wages or wages that were less than her weekly benefit amount available under the unemployment-compensation statute.
“DIR asserts that because the claimants in the present case, irrespective of the existence of a employer-employee relationship, received no wages during the one-month ‘swing time’ period, they were unemployed. See Director, Department of Indus. Relations v. Alabama By-Products, Inc., 374 So.2d 344, 347 (Ala.Civ.App.1979). I agree.
“Section 25-4-71, Ala.Code 1975, provides:
“[Code section set out previously.]
“The record indicates that throughout their employment with Gulf Caribe both claimants adhered to the collective-bargaining agreement, working and subsequently departing the vessel during ‘swing time.’ The claimants performed no services for Gulf Caribe and received no wages from the company during the ‘swing time’ period. Despite the claimants’ having adhered to the provisions of the collective-bargaining agreement, the statute is clear on its face that an individual is totally unemployed in a week in which he receives no pay and in which he performs no services. Further, the Alabama Legislature has made no exception for maritime employees with respect to determining when a period of unemployment begins. Therefore, I conclude that the claimants were unemployed within the meaning of § 25-4-71, Ala.Code 1975.”
915 So.2d at 1163-64 (footnote omitted).
With respect to the trial court’s determination that § 25^1-78(2)a.4. disqualifies the claimants from receiving unemployment compensation, Presiding Judge Yates quoted § 25-4-78 at length and concluded:
“Contrary to the trial court’s position that ‘the language of [§ 25-4-78(2)a.4., Ala.Code 1975,] is clear [and] that nothing in the statute authorizes payment of benefits during the period of an established leave of absence policy or during leave established by union contract,’ § 25-4-78(2), Ala.Code 1975, disqualifies a claimant from the receipt of unemployment-compensation benefits for leave-of-absence policies relating to illness, not leave-of-absence policies in general. The Legislature defined ‘established leave-of-absence policy’ in § 25^1-78(2)a.3. as ‘any leave-of-absence policy covering sickness and disability.’ The plain meaning of this definition restricts disqualification from receipt of unemployment benefits to employees requesting a leave of absence due to sickness or *1176 disability. The trial court and the main opinion have taken the phrase in § 25-4-78(2)a.4. regarding ‘an established leave of absence policy, the duration of which was set in accordance with ... a collective bargaining agreement’ out of context from the remainder of § 25-4-78(2). ‘In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature.’ DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998). ‘Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive.’ Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996). Accordingly, the claimants, who were required to leave their employ on a periodic basis, are not subject to disqualification under § 25-4-78(2).”
915 So.2d at 1165-66.
DIR filed an application for a rehearing, which the Court of Civil Appeals overruled. However, Judge Murdock wrote a special concurring opinion on denial of rehearing, which Judge Crawley joined, setting out an alternative rationale in support of the trial court’s judgment.[2] Judge Mur-dock stated:
“The Department of Industrial Relations (‘DIR’) argues in support of its application for rehearing that the opinion of this court on original deliverance disregarded the statutory definition of an ‘established leave-of-absence policy’ in § 25-4-78(2)a.4„ Ala.Code 1975. In essence, this is the same argument made by Presiding Judge Yates in her dissenting opinion on original deliverance. I agree with this argument.
“Nonetheless, I concurred in the result upon original deliverance, and I now concur in overruling DIR’s application for rehearing. I did so, and do so, because I agree with the reasoning of the trial court in paragraphs 6, 7, 8, 12, and 13 of the trial court’s judgment, as quoted in the main opinion of this court on original deliverance.
“Because of the manner in which the payment of wages to the employees was structured, it is true that no wages were received by the employees during the ‘swing time’ period at issue. Under § 25-4-71, Ala.Code 1975, however, the question is whether the employer paid the employee ‘with respect to’ the swing time. I think that is a different question than whether they were paid during the swing-time period at issue. Based on the reasoning outlined in the above-referenced paragraphs of the trial court’s judgment, I conclude that the employees did receive wages with respect to the 30 days they were off out of every 90 days. Our unemployment-compensation statutes were not intended to be applicable merely because an employee’s regular time off is taken for an extended period once every three months instead of for a shorter period at the end of every week.”
915 So.2d at 1168-69.
The writings of the Court of Civil Appeals quoted above adequately present the spectrum of legal analysis on the issue whether Welch and Smith are entitled to unemployment compensation for their swing time. We agree with Presiding Judge Yates, joined on denial of rehearing by Judges Murdock and Crawley, that the *1177 “established leave-of-absence policy” in § 25^4-78(2)a.4. applies only to leaves taken as the result of sickness or disability. Further, we agree with the rationale expressed by Judge Murdock in his special concurrence that the portion of the test for unemployment set out in § 25-4-71, which provides that an employee is unemployed when he or she does not receive wages “with respect to” a particular week, is not applicable to Smith and Welch because their compensation under the collective-bargaining agreement compensates them for their swing time as well as for the period they are working on their ship.
Specifically, we note that the phrase “with respect to,” has a broad and inclusive connotation.
“Although the parties cite no case construing the phrase, ‘with respect to,’ in the inclusionary clause [of Rule 4(a)(1)(D), Ala. R.App. P.], the phrase is synonymous with ‘relating to.’ Phoenix Leasing Inc. v. Sure Broadcasting, Inc., 843 F.Supp. 1379, 1388 (D.Nev.1994), aff'd, 89 F.3d 846 (9th Cir.1996); Smith v. Matthews, 611 So.2d 1377, 1380 (La.1993) (citing 46 Words and Phrases, ‘With Respect to,’ 202 (1970)).
“In other contexts, this Court has recognized that the phrase ‘relating to’ has a particularly broad reach. Serra Chevrolet, Inc. v. Hock, 891 So.2d 844, 847 (Ala.2004) (arbitration); Old Republic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala.1994) (arbitration); Haywood v. Russell Corp., 584 So.2d 1291, 1293 (Ala.1991) (ERISA preemption). It is more inclusive, for example, than the phrases ‘arising out of and ‘arising under.’ Lanier, 644 So.2d at 1262.”
Southeastern Meats of Pelham, Inc. v. City of Birmingham, 895 So.2d 909, 913 (Ala.2004).
The facts show that Smith and Welch were continuously employed by Gulf Car-ibe throughout the 90-day periods at issue (60 days aboard a vessel followed by 30 days of swing time), that they continued to receive employment benefits throughout those periods in the form of health insurance and union benefits, that they were never discharged by Gulf Caribe, and that they never looked for other employment. The record supports the finding that they were paid salaries that included, and that were paid with respect to, both their work aboard ship and their time off, i.e., their swing time, in a manner analogous to employees who receive weekly pay for a period that includes a five-day work week and a nonworking two-day weekend. Thus, Smith and Welch received wages “with respect to” the 30-day swing time. It follows that they were not “unemployed” as that term is defined in § 25-4-71 and that they were therefore not entitled to unemployment-compensation benefits. This conclusion comports with the statement by the Court of Civil Appeals in Director of Department of Industrial Relations v. Butler, 367 So.2d 496, 499 (Ala.Civ.App.1979), and cited by the trial court in its summary-judgment order, that “the basic purpose of the Unemployment Compensation Act ... is to provide funds to an involuntarily unemployed worker so that he may avoid destitution during his unemployment. Metcalf v. Department of Indus. Relations, 245 Ala. 299, 16 So.2d 787 (1944); Holmes v. Cook, 45 Ala.App. 688, 236 So.2d 352 (1970).” Our conclusion also comports with the statement in Arrow Co. v. State Department of Industrial Relations, 370 So.2d 1013, 1015 (Ala.Civ.App.1979), that the “purpose [of the unemployment-compensation law is] to provide a worker with funds to avoid a period of destitution after having involuntarily lost his employment and thus his income. It aids in sustaining him while he looks for other employment. It is limited in time *1178 and amount. It is not a gratuity.” The trial court properly entered a summary judgment for Gulf Caribe; the judgment of the Court of Civil Appeals affirming that summary judgment is therefore due to be affirmed.
AFFIRMED.
NABERS, C.J., and SEE, STUART, and PARKER, JJ., concur.

. Gulf Caribe also cross-appealed on the ground that the trial court had erred in not requiring the repayment of unemployment compensation Gulf Caribe had paid to Welch and Smith during the pendency of the action. However, it did not argue that issue, and the Court of Civil Appeals consequently affirmed the trial court's judgment on that point.

. We note that Judge Murdock’s special concurrence, joined by Judge Crawley, means that the rationale expressed in the per curiam opinion issued on original submission is supported by only a two-judge plurality and removes any precedential effect from that rationale. Thus, we do not address the propriety of the rationale in that opinion overruling Alabama By-Products because that rationale has now been rejected by three of the judges.