Southeastern Meats of Pelham, Inc., and William H. Craig (hereinafter collectively "Southeastern") appeal from a summary judgment in favor of the City of Birmingham ("the City") in Southeastern's action against the City for declaratory and injunctive relief. We dismiss the appeal.
The events underlying this dispute began on April 30, 2002, when the Birmingham City Council passed a resolution authorizing Mayor Bernard Kincaid to execute on behalf of the City an agreement with Wal-Mart Real Estate Business Trust ("Wal-Mart") for the redevelopment of property in the Roebuck/Parkway East area of Birmingham ("the acquisition area"). Kincaid and Wal-Mart executed such an agreement, dated September 17, 2002 ("the Agreement").
Pursuant to the Agreement, Wal-Mart was to budget $16 million for the purchase of real estate in the acquisition area and for the construction of a Wal-Mart Supercenter retail store on the property ("the project"). For its part, the City agreed to exercise its power of eminent domain, if necessary, to acquire real-estate parcels comprising the project and to convey such property to Wal-Mart. Moreover, "the City agree[d] to contribute [a maximum of $10 million] to the cost of acquiring [property for the project]." The City's contribution obligation was to be evidenced by a "City of Birmingham Limited Obligation Special Project Revenue Warrant Series 2002" issued in the maximum amount of $10 million ("the Warrant"). The City's contribution was to be "payable from and limited to 90% of the municipal sales tax *Page 911 
revenue generated by the Project per year . . . until payment of the total reimbursement of the obligation to [Wal-Mart]."
On September 30, 2002, the City filed in the Jefferson Circuit Court a petition against the "taxpayers and citizens of the City of Birmingham" seeking the validation of the proceedings authorizing the issuance of the Warrant ("the validation proceeding"), and citing as authority for the filing of the petition Ala. Code 1975, § 6-6-750 et seq., entitled "Validation of County, City, etc., Obligations." The City sought
 "before the issuance of the Warrant, to determine its authority to issue the Warrant, the legality of all proceedings had or taken in connection therewith, the means provided for the payment thereof, the validity of all covenants and provisions and agreements contained in the Authorizing Resolution and in the Agreement, and the validity of the Warrant and the Agreement."
(Emphasis added.)
On October 16, 2002, the Jefferson Circuit Court ordered the publication of a notice of the validation proceeding "to the taxpayers and citizens of the City of Birmingham." The notice was published once a week for three consecutive weeks in a newspaper of general circulation in Birmingham.
Pursuant to § 6-6-752(c), the Jefferson County District Attorney was served with the petition and filed an answer. The answer asserted affirmative defenses, including Ala. Const. 1901, § 94, as amended by Amend. No. 112, and § 225, as amended by Amend. No. 268.
At a hearing on November 8, 2002, the petition was unopposed. Moreover, the assistant district attorney who attended the hearing stated: "[T]here have not been any taxpayers or citizens of Birmingham who have contacted the district attorney's office in opposition to this plan. I have . . . reviewed all the documents and gone through them and we are satisfied at this point that the [City has] satisfied [its] burden in this case."
On November 8, 2002, the Jefferson Circuit Court entered a final judgment "validat[ing] and confirm[ing] the Warrant and all proceedings had and taken in connection" therewith, including "[a]ll covenants, agreements, provisions and obligations of the City," and, in particular, the Agreement ("the validation order"). From that judgment, there was no appeal.
However, on September 16, 2003, Southeastern filed a complaint "on behalf of the individual taxpayers and locally owned businesses in the City of Birmingham." Southeastern challenged on four grounds the City's authority to contribute the money it had pledged in the Agreement toward acquisition of property for the project. Southeastern averred, first, that the contribution would violate Ala. Const. § 94, as amended by Amend. No. 112; second, that it would violate Alabama's competitive-bid law; third, that it would violate "Alabama's redevelopment and urban renewal laws"; and fourth, that it would violate the equal-protection guarantee of the United States Constitution. Southeastern sought a judgment "declaring the portion of the Agreement requiring the City to rebate sales taxes to Wal-Mart as null and void" and "enjoining the City from rebating the sales taxes as contemplated in the Agreement to Wal-Mart."
The City filed a "motion to dismiss," pursuant to Rules 12(b)(6) and 56, Ala. R. Civ. P. The City argued that Southeastern's action was barred "by the operation of [Ala. Code 1975, § 6-6-755], which estops [a] challenge to matters which previously were the subject of a statutory validation lawsuit." Because *Page 912 
the City supported its motion with evidentiary materials, its motion was treated as a motion for a summary judgment.
On December 12, 2003, the trial court entered a summary judgment in favor of the City. The final order stated, in pertinent part:
 "In this lawsuit, [Southeastern seeks] to challenge certain actions taken by the City of Birmingham in connection with an urban renewal plan in the Roebuck area. The urban renewal plan and the actions challenged in this lawsuit were the subject of a prior validation proceeding filed by defendant City of Birmingham pursuant to [Ala. Code 1975,] § 6-6-750 et seq., in a lawsuit styled City of Birmingham v. The Taxpayers and Citizens of the City of Birmingham, Alabama, Civil Action No. 02-5903, Circuit Court of Jefferson County, Alabama. [Section] 6-6-755 provides that the prior validation action precludes the causes of action set out in this case. The court accordingly finds as a matter of law that [§] 6-6-755 statutorily precludes the maintenance of the claims and causes of action asserted by [Southeastern]."
Thirty-five days later, on January 16, 2004, Southeastern filed a notice of appeal.
The City moved to dismiss the appeal, citing Ala. R.App. P. 4(a)(1)(D), which provides:
 "In appeals from the following orders or judgments, the notice of appeal shall be filed within 14 days
(2 weeks) of the date of the entry of the order or judgment appealed from: . . . (D) any judgment in an action for the validation of public obligations, including any action wherein a judgment is entered with respect to the validity of obligations of the State of Alabama or any agency or instrumentality thereof. . . ."
(Emphasis added; the emphasized portion is hereinafter referred to as "the inclusionary clause"). The City contends that Southeastern's "appeal is obviously an appeal of a judgment `entered with respect to the validity of obligations of' the City of Birmingham, which is an instrumentality of the State of Alabama." "Accordingly," the City argues, "because an appeal was not timely filed within fourteen (14) days, as required by [Rule 4(a)(1)(D), Ala. R.App. P.], . . . this Court does not have jurisdiction over this appeal and the appeal [must] be dismissed."
In response to the City's motion, Southeastern argues:
 "There is no basis for the City's argument that this is an appeal from a validation proceeding. This suit was brought by taxpayers in an effort to enjoin the City from making an illegal gift. This appeal is from an order granting the City's motion to dismiss in which the City raised an earlier validation proceeding as a defense. . . . The City's reliance on the prior validation proceeding as a defense does not transform this action into a validation proceeding, nor does it transform the judgment into one validating the public obligations.
 "Rule 4(a)(1)(D) is clear and unambiguous, applying only to judgments in actions for the validation of public obligations. The complaint in this case is not based on any validation statute. Indeed, there is no Alabama statute that would allow taxpayers to bring an action for the validation of a public obligation. The right to bring validation actions is limited to the unit, instrumentality, county, or agency desiring to issue the obligation. . . .
". . . .
 ". . . Consequently, in order for this rule to apply, the appeal must have been *Page 913 
taken from a judgment `in an action for the validation of public obligations. . . .'
 ". . . If the rule was intended to include actions in which prior validation proceedings were raised as a defense then the rule would have been phrased to include those actions."
(Emphasis in original.)
There is no dispute that this appeal is not an appeal from the validation proceeding itself. Reduced to its essence, Southeastern's argument is simply that the 14-day appeal period applies only to appeals from validation proceedings per se
and that the inclusionary clause adds nothing to the scope of Rule 4(a)(1)(D). More specifically, Southeastern contends that the word "including" introducing the inclusionary clause is "limitational" — i.e., that it restricts the matter described in the inclusionary clause specifically to the matter referenced in the preceding clause. We disagree with this argument.
"[T]he construction of rules of court are for the court which promulgated them." Alabama Public Serv. Comm'n v. RedwingCarriers, Inc., 281 Ala. 111, 115, 199 So.2d 653, 656 (1967). "We start with the basic premise that words used in court rules must be given their plain meaning." Nieto v. State,842 So.2d 748, 749 (Ala.Crim.App. 2002). In construing a rule promulgated by this Court, effect must be given to "each word, phrase, and clause." State v. Old West Bonding Co., 203 Ariz. 468, 471,56 P.3d 42, 45 (Ct.App. 2002).
In another context, this Court explained that the word "`including' is not to be regarded as limitational orrestrictive, but merely as a particular specification of something to be included or to constitute a part of some other
thing." Sims v. Moore, 288 Ala. 630, 635, 264 So.2d 484, 487
(1972) (emphasis added). "`Including' is not a word of limitation, rather it is a word of enlargement, and in ordinary significance also may imply that something else has been givenbeyond the general language which precedes it." Id. (emphasis added).
Although the parties cite no case construing the phrase, "with respect to," in the inclusionary clause, the phrase is synonymous with "relating to." Phoenix Leasing Inc. v. Sure Broadcasting,Inc., 843 F.Supp. 1379, 1388 (D.Nev. 1994), aff'd, 89 F.3d 846 (9th Cir. 1996); Smith v. Matthews, 611 So.2d 1377, 1380 (La. 1993) (citing 46 Words and Phrases, "With Respect to," 202 (1970)).
In other contexts, this Court has recognized that the phrase "relating to" has a particularly broad reach. Serra Chevrolet,Inc. v. Hock, 891 So.2d 844, 847 (Ala. 2004) (arbitration); OldRepublic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala. 1994) (arbitration); Haywood v. Russell Corp., 584 So.2d 1291, 1293
(Ala. 1991) (ERISA preemption). It is more inclusive, for example, than the phrases "arising out of" and "arising under."Lanier, 644 So.2d at 1262.
Additionally, it is immaterial whether the validation proceeding is used in a subsequent case as a defense.
 "The term `action,' `in its usual legal sense means a suit brought in a court; a formal complaint within the jurisdiction of a court of law. The legal and formal demand of one's right from another person or party made and insisted on in a court of justice. . . . It includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court.' Black's Law Dictionary 13-15 (Abridged 5th ed. 1983).
 "The action includes within it, Defendant's defenses. An action is not composed of two separate elements: Plaintiff's case and Defendant's affirmative *Page 914 
defenses. . . . Plaintiff's action necessarily includes all affirmative defenses raised against it.
Black's Law Dictionary lists no such entity as an `affirmative defense action.'"
Phoenix Leasing, 843 F.Supp. at 1388 (emphasis added). Otherwise stated, defenses are an integral part of any action, including "any action wherein a judgment is entered with respect to the validity of obligations of the State of Alabama or any . . . instrumentality thereof."
Thus, the inclusionary clause cannot be restricted, as Southeastern insists, to a per se appeal from a validation proceeding. The "judgment" that is "entered with respect to the validity of obligations of the State of Alabama or any . . . instrumentality thereof," which is the subject of the inclusionary clause, means something more than an appeal "taken from a judgment `in an action for the validation of public obligations.'" In other words, Rule 4(a)(1)(D) contemplates two species of judgment — one that arises directly out of a validation proceeding, and one that merely "relates to" or is "entered with respect to" such a judgment. Southeastern's construction of Rule 4(a)(1)(D) would improperly render the inclusionary clause extraneous verbiage.
In short, the language of the inclusionary clause is broad enough to include a collateral attack on a judgment arising out of a validation proceeding. The issue, therefore, is whetherthis action is a collateral attack on the validation order. If it is, then Southeastern's appeal is untimely and must be dismissed.
In this connection, Southeastern contends that the validation order cannot "estop inquiry into this transaction," because, it insists, "the transactions at issue in this case were neversubject to the validation order." Southeastern's brief, at 29 (emphasis added). This argument rests on the following reasoning, as we understand it: (1) Wal-Mart agreed to advance the City money to purchase property in the acquisition area; (2) the City agreed to use the advance to purchase property and then to convey the property to Wal-Mart; (3) the Warrant was issued to evidence the City's obligation to use the money for that purpose; (4) Wal-Mart successfully purchased all the property without the City's aid; (5) Wal-Mart never advanced any money to the City; (6) the "Warrant could not have been issued under the terms of the Agreement," Southeastern's brief, at 29; (7) "the validation order has never been triggered," id.; (8) this case is not concerned with money Wal-Mart agreed to advance, but never advanced, to the City; (9) the validation proceeding and the validation order addressed subject matter different from that addressed in this case; (10) this action is not a collateral attack on the validation order; and, therefore, (11) the appeal from the summary judgment is not subject to the 14-day period set forth in Rule 4(a)(1)(D).
According to Southeastern's analysis, the Warrant, and consequently the validation order, concerned only purchase money that Wal-Mart would advance to the City in the event the property could be acquired only by condemnation by the City. Unfortunately for Southeastern, its analysis is incorrect. The subject of the Warrant and the validation order was the same $10 million contribution challenged in this case.
This fact was well established during the November 8, 2002, hearing in the validation proceeding. At that hearing, before the Warrant was issued, the following colloquy occurred:
 "[The court]. City of Birmingham will own the property and lease it?
 "[Counsel for the City]. No, we are subsidizing the land purchase by issuing *Page 915 warrants which then will be paid off using portions of the sales tax.
"[The court]. Okay.
 "[Counsel for the City]. So we will not actually be in the title of the land.
"[The court]. [Are] you talking about $10 million?
"[Counsel for the City]. Yes, sir.
". . . .
 "[Counsel for the City]. The resolutions of the [council] apply to the land cost not to exceed 10 million dollars. [Wal-Mart's purchases] are already in excess of that and so it will be $10 million for the acquisition of the land. That's the City's part of that."
(Emphasis added.) This colloquy is consistent with the Agreement in demonstrating that the City was to "subsidiz[e] the land purchase by issuing" the Warrant to evidence its $10 million contribution, regardless of whether Wal-Mart ever advanced any purchase money.
Moreover, Southeastern concedes:
 "Using the threat of condemnation, Wal-Mart acquired all the property directly from the owners
of the property. There were never any condemnation proceedings initiated by the City. The City never
purchased any of the property located in the Acquisition Area. . . . Wal-Mart never advanced any money to the City to effect any condemnation or acquisition of any property as provided in the Agreement."
Southeastern's brief, at 28-29 (emphasis added). Because the City never received an advance from Wal-Mart, but, nevertheless, conceded that the purchase price had already exceeded $10 million, and that it was therefore obligated to contribute $10 million in the form of sales-tax relief, which obligation was to be evidenced by the $10 million Warrant, it is abundantly clear that the Warrant and the $10 million it evidenced were the subjects of both the validation proceeding and this action.
Significantly, the validation order expressly validated, not only the Warrant, but, also, "all proceedings had and taken in connection with . . . [a]ll covenants, agreements, provisionsand obligations of the City set forth in the . . . Agreement." (Emphasis added.) Clearly, the validation order specifically contemplated and included the $10 million obligation challenged in this case. In that connection, Southeastern contends that "[t]his suit was brought by taxpayers in an effort to enjoin the City from making an illegal gift." Southeastern's response to motion to dismiss, at 2. However, the "illegal gift" challenged in this case was the same $10 million obligation that was evidenced by the Warrant and that was the subject of the validation order.
A judgment in favor of Southeastern in this action would effectively vacate, reverse, or render void the validation order. This action cannot be considered anything other than a collateral attack on a judgment in a validation proceeding. We are compelled to conclude, therefore, that this action falls within the inclusionary clause of Rule 4(a)(1)(D), which requires the filing of a notice of appeal within 14 days of the date of the judgment appealed from.
The "[t]imely filing of the notice of appeal is ajurisdictional act." Committee Comments to Rule 3, Ala. R.App. P. (emphasis added). Because this appeal was not filed within 14 days of the entry of the summary judgment, it is untimely. Consequently, the appeal must be dismissed. See Ala. R.App. P. 2(a)(1).
APPEAL DISMISSED.
NABERS, C.J., and HOUSTON, LYONS, and JOHNSTONE, JJ., concur. *Page 916