LYONS, Justice.
 

 Bon Harbor, LLC (“Bon Harbor”), and Michael F. Hinds appeal from a judgment entered against them and in favor of United Bank and its employees Russell K. Banks, Frank Meigs, and Jamie Lipham. We affirm.
 

 Procedural History
 

 On April 5, 2007, United Bank sued Bon Harbor, Hinds, David P. Herrick, Bradley P. Katz, and C. Gibson Vance seeking recovery of more than $7,500,000 owed to United Bank by Bon Harbor on a promissory note and an amended promissory note. The notes were secured by a mortgage, evidenced by a mortgage agreement, and were guaranteed by Hinds, Herrick, Katz, and Vance (collectively “the guarantors”). On June 15, 2007, United Bank amended its complaint to seek a reformation of the promissory notes and mortgage or, alternatively, a declaration that the documents were valid; a judgment on the promissory notes and guaranties; foreclosure of the mortgage or, alternatively, the imposition of a purchase-money mortgage, equitable mortgage, or resulting trust in the real property Bon Harbor had purchased with the proceeds of the loan; and the imposition of a constructive trust on the funds loaned to Bon Harbor by United Bank.
 

 On July 13, 2007, Bon Harbor and the guarantors asserted counterclaims against United Bank and third-party claims against United Bank employees Banks, Meigs, and Lipham (collectively “the third-party defendants”). The complaint stated claims of “breach of duty,” fraud, suppression, and a claim for a declaratory judgment “setting forth the rights of the parties” with respect to the promissory notes and guaranties.
 

 United Bank subsequently moved for a summary judgment on its claims against Bon Harbor and the guarantors. It expressly requested a judgment declaring that the original and the amended promissory notes were valid and binding on Bon Harbor and that the mortgage agreement was valid and binding on Bon Harbor; an order foreclosing that mortgage or imposing an equitable mortgage on the property Bon Harbor had purchased with the loan proceeds; and a judgment in favor of United Bank and against Bon Harbor and the guarantors. Bon Harbor and the guarantors responded, and, on March 20, 2008, the trial court entered an order stating simply that the motion for a summary judgment was granted.
 

 Bon Harbor and the guarantors filed a notice of appeal with this Court on the same day the trial court entered its summary judgment. That appeal was assigned case no. 1070902. Five days later, while case no. 1070902 was pending before this Court, the trial court entered an order assessing damages against Bon Harbor and the guarantors on the March 20, 2008, judgment. Bon Harbor and the guarantors filed a notice of appeal to this Court from the trial court’s March 25, 2008, order. That appeal was assigned case no. 1070994.
 

 In
 
 Bon Harbor, LLC v. United Bank,
 
 20 So.3d 1263 (Ala.2009), this Court decided both appeals. This Court determined that
 
 *85
 
 the March 20, 2008, judgment was not final because it did not dispose of all claims against all parties to the action. 20 So.3d at 1265-66 (citing
 
 Dickerson v. Alabama State Univ.,
 
 852 So.2d 704, 705 (Ala.2002)). As a result, this Court lacked subject-matter jurisdiction to consider case no. 1070902. Because the March 25, 2008, order was entered while case no. 1070902 was pending before this Court, the trial court lacked subject-matter jurisdiction over the action at the time it entered the order. As a result, the March 25, 2008, order was void and would not support an appeal. 20 So.3d at 1266 (citing
 
 Gallagher Bassett Servs., Inc. v. Phillips,
 
 991 So.2d 697, 701 (Ala.2008)). Accordingly, this Court dismissed the appeals in both case no. 1070902 and case no. 1070994.
 

 After dismissal of the appeals, United Bank and the third-party defendants moved for a summary judgment, this time on the counterclaims and third-party claims asserted against them by Bon Harbor and the guarantors. Before the trial court ruled on this motion, Herrick, Katz, Vance, United Bank, and the third-party defendants settled their claims against each other, and the trial court dismissed the claims pending as to those parties. Accordingly, the only claims that remained pending before the trial court were United Bank’s claims against Bon Harbor and Hinds, and Bon Harbor and Hind’s counterclaims against United Bank and their third-party claims against the third-party defendants.
 

 On August 31, 2009, Bon Harbor and Hinds moved the trial court to vacate its March 20, 2008, summary judgment for United Bank based on allegedly newly discovered evidence. Bon Harbor and Hinds also filed two motions for a summary judgment in their favor on United Bank’s claims against them, stating different grounds in each motion and supporting each motion with affidavits from Hinds.
 
 [1]
 
 United Bank responded to Bon Harbor and Hinds’s motions and moved to strike Hinds’s affidavits on several grounds.
 

 On October 8, 2009, the trial court entered a judgment for United Bank and the third-party defendants and against Bon Harbor and Hinds.
 
 [2]
 
 The trial court’s judgment, in relevant part, stated as follows:
 

 “The Court having granted United Bank’s Motion for Summary Judgment on March 20, 2008, enters final judgment in favor of United Bank and against [Bon Harbor and Hinds] jointly and severally, in the amount of $8,350,050.02, consisting of principal, accrued interest and late fees calculated as of March 20, 2008, with interest thereafter accumulating at a daily rate of $1626.00. It is further
 

 “Ordered, adjudged and decreed that United Bank is entitled to foreclose on the property described in the mortgage dated July 8, 2005, and recorded as Instrument No. 914161 of the Baldwin County, Alabáma, Probate records and to apply the proceeds of the foreclosure sale to the indebtedness of [Bon Harbor and Hinds] to United Bank.”
 

 
 *86
 
 The trial court then 1) granted United Bank and the third-party defendants’ motion for a summary judgment as to Bon Harbor and Hinds’s counterclaims and third-party claims; 2) denied Bon Harbor and Hinds’s motion to vacate the March 20, 2008, judgment; 3) denied as untimely and moot Bon Harbor’s and Hinds’s motions for a summary judgment; and 4) granted United Bank and the third-party defendants’ motion to strike Hinds’s affidavits.
 

 Bon Harbor and Hinds subsequently moved the trial court to amend its October 8, 2009, judgment under Rule 59(e), Ala. R. Civ. P., asking the trial court to reword its judgment to show that it had considered the allegedly newly discovered evidence submitted by Bon Harbor and Hinds. The trial court denied that motion; Bon Harbor and Hinds appealed.
 

 Factual Background
 

 The evidence presented to the trial court before it entered its March 20, 2008, summary judgment shows the following facts. Bon Harbor is a limited liability company owned by Decatur, LLC (“Decatur”), Gulf Stream Properties, Inc. (“Gulf Stream”), and DGB, LLC (“DGB”). Decatur is owned by Hinds; Gulf Stream is owned by Paul Kirkland; and DGB is owned by Herrick, Katz, and Vance. Bon Harbor’s amended articles of organization name Hinds and Kirkland as managers and state: “Both [Hinds] and [Kirkland] acting in unison shall have the authority to bind [Bon Harbor]. No other individuals or entities shall have any authority to bind [Bon Harbor] without the written approval of all members and general managers.” Bon Harbor’s operating agreement also names Hinds and Kirkland as general managers. Paragraph 9(a) of the operating agreement provides: “It shall require the signatures of both general managers to bind [Bon Harbor] as it relates to any action taken by [Bon Harbor] or any transaction entered into by [Bon Harbor].” Paragraph 9(d) states: “The general managers alone shall be responsible for the management of [Bon Harbor’s] business, with all rights and powers generally conferred by law....”
 

 In 2005, Bon Harbor purchased real property in Baldwin County (“the property”) for approximately $10,000,000. To fund $7,500,000 of the purchase price, Bon Harbor negotiated a loan from United Bank. On July 8, 2005, Hinds and Kirkland signed a promissory note evidencing the loan. The note identified United Bank as the lender and Bon Harbor as the borrower. It provided for a variable interest rate. The note stated that the loan was advanced for the purpose of purchasing commercial property and was paid as a single advance on July 8, 2005. The note stated that it was secured by a mortgage on the property and by the personal guaranties of Hinds, Herrick, Katz, and Vance. Hinds signed the July 8, 2005, note under the following signature line: “Bon Harbor, LLC by Decatur, LLC by Michael F. Hinds: Managing Member.” Kirkland signed the note under the following signature line: “Bon Harbor LLC by Gulf Stream Properties, Inc. by Paul Kirkland: President.”
 

 On July 8, 2005, Hinds and Kirkland also signed a mortgage agreement securing the loan. That agreement identified Bon Harbor as mortgagor and United Bank as mortgagee. It provided United Bank a security interest in the property of $7,500,000. Hinds signed the mortgage agreement for Bon Harbor under the following signature line: “Decatur LLC by Michael F. Hinds: Managing Member.” Kirkland signed the mortgage agreement for Bon Harbor under the following signature line: “Gulf Stream Properties, Inc. by Paul Kirkland, President.” The mortgage
 
 *87
 
 agreement included a notarized certification that Hinds and Kirkland signed the mortgage agreement as managing members of Bon Harbor. The mortgage was recorded on August 11, 2005.
 

 On the same day, using the same signature lines, Hinds and Kirkland signed a certificate of authority identifying Decatur and Gulf Stream as managing members of Bon Harbor. The certificate of authority provided in part:
 

 “[T]he undersigned members and managers, as provided in the organizational documents, as authorized by law, and as hereby further authorized (and in relation to actions that may have been previously taken as hereby ratified) do hereby affirm the authority of, and do hereby further authorize, the persons designated above as the manager(s) of [Bon Harbor].
 

 “(Comprehensive Authority) To act for and on behalf of [Bon Harbor] in relation to all business activities conducted by [Bon Harbor] with [United Bank], including without limitation entering into any and all financial transactions and activities; trust depository and borrowing transactions and activities; and all other transactions and activities conducted for or in the name of [Bon Harbor] with [United Bank] and in their sole and exclusive judgment and discretion to take any and all actions on behalf of [Bon Harbor] they deem appropriate....
 

 [[Image here]]
 

 “And further, the undersigned do hereby further certify and affirm to [United Bank] that ... the authority hereby certified and authorized is in conformity with the organization documents of [Bon Harbor], and to the extent there shall be a conflict between this certificate and said organization documents, the conflict is hereby waived and the authority granted and certified herein shall govern.”
 

 Using the same signature lines, Hinds and Kirkland also signed an “errors and omissions statement.” That document stated that Bon Harbor agreed, “if requested by [United Bank] or its agent, to fully cooperate in the correction, if necessary in the reasonable discretion of [United Bank,] of any and all loan closing documents so that all documents accurately describe the loan between [Bon Harbor] and [United Bank].... ” Bon Harbor also agreed “to comply with all above noted reasonable requests by [United Bank] within thirty (30) days from the date of the mailing of the correction requests by [United Bank].”
 

 Hinds testified at his deposition that the signature lines on the July 8, 2005, promissory note, mortgage agreement, certificate of authority, and errors and omissions statement were not correct because they identified Decatur and Gulf Stream as managing members of Bon Harbor when, in fact, Hinds and Kirkland, acting individually, were the managers. Hinds testified that Bon Harbor had provided United Bank with its articles of organization before United Bank prepared the July 8, 2005, documents. Hinds also testified that he and Kirkland advised Meigs — United Bank’s representative with respect to the July 8, 2005, transaction — of the error. Meigs, Hinds testified, said “that’s the way [United Bank] wanted us to sign,” and instructed Hinds and Kirkland to sign the July 8, 2005, documents despite the error. Hinds and Kirkland did so with knowledge of the error.
 

 Hinds, Herrick, Katz, and Vance executed guaranties securing the July 8, 2005, loan. Each of the guaranties included the following identical language and each of the guarantors chose the option indicated by the “X”:
 

 
 *88
 
 “Guarantor hereby unconditionally guarantees the prompt and full payment and performance and promises to pay all of [Bon Harbor’s] present and future, joint and/or several, direct and indirect, absolute and contingent, express and implied, indebtedness, liabilities, obligations and covenants (cumulatively ‘indebtedness’) to [United Bank] as follows:
 

 “X UNLIMITED: Guarantor’s liabilities and obligations under this guaranty (‘obligations’) shall be unlimited and shall include, all present and future written agreements between [Bon Harbor] and [United Bank] (whether executed for the same or different purposes) including, but not limited to, the [July 8, 2005,] promissory notes and agreements ... evidencing the indebtedness, together with all interest and all of [United Bank’s] expenses and costs....
 

 “_ LIMITED TO AN AMOUNT: Guarantor’s liabilities and obligations under this guaranty (‘obligations’) shall include all present and future written agreements between [Bon Harbor] and [United Bank] (whether executed for the same or different purposes) ... but shall be limited to the principal amount of_ Dollars ($_), together with all interest and all of [United Bank’s] expenses and costs....
 

 “_LIMITED TO THE FOLLOWING DESCRIBED NOTES/AGREEMENTS: Guarantor’s liabilities and obligations under this guaranty (‘obligations’) shall be limited to the following described notes and agreements between [Bon Harbor] and [United Bank] evidencing the indebtedness, together with all interest and all of [United Bank’s] expenses and costs.... ”
 

 Despite the language of the promissory note stating that $7,500,000 was transferred to Bon Harbor on July 8, 2005, United Bank did not transfer the funds that day. Based on the materials submitted to the trial court before the March 20, 2008, judgment, it appears that United Bank did transfer the $7,500,000 to Bon Harbor; however, it is unclear precisely when that transfer occurred. On July 13, 2005, apparently before the $7,500,000 was transferred, United Bank loaned Bon Harbor $2,200,000. Hinds testified at his deposition that, when the $7,500,000 was transferred to Bon Harbor, it was used to repay the $2,200,000 loan and to pay the seller of the property the remaining amount owed on the property. Bon Harbor subsequently paid interest on its indebtedness to United Bank.
 

 On August 25, 2006, using the same signature lines as the earlier documents, Hinds and Kirkland executed a promissory note refinancing Bon Harbor’s debt with United Bank. That promissory note identified United Bank as the lender and Bon Harbor as the borrower. It stated the loan amount as approximately $7,553,000 and provided for a variable interest rate. The note stated that it was secured by the July 8, 2005, mortgage. Using the same signature lines, Hinds and Kirkland also signed a certificate of authority and an errors and omissions statement containing nearly identical language as that quoted above from the July 8, 2005, documents. Hinds testified that he once again advised Meigs of the error in the signature lines of the documents but that Meigs again instructed him and Kirkland to sign the documents anyway. Once again, Hinds and Kirkland did so with knowledge of the error.
 

 On August 25, 2006, Hinds, Herrick, Katz, and Vance executed guaranties securing the August 25, 2006, loan. The guaranties included language identical to that quoted above from the July 8, 2005,
 
 *89
 
 guaranties. In its complaint and amended complaint, United Bank sought enforcement of the August 25, 2006, loan documents and guaranties. United Bank submitted an affidavit from its employee, H. Bruce Trammell, who stated that, as of January 4, 2008, the amount due on the August 25, 2006, promissory note, including accrued interest, was $8,226,474, and that interest accrued at the amount of $1,626 per day.
 

 The trial court entered its March 20, 2008, summary judgment for United Bank based on these facts. After the earlier appeals from the March 20, 2008, judgment were dismissed by this Court’s decision in
 
 Bon Harbor, LLC v. United Bank,
 
 the parties presented the following additional facts to the trial court in support of them respective motions for a summary judgment and on Bon Harbor and Hinds’s motion to vacate.
 

 Kirkland testified at deposition that he knew that the signature lines on the July 8, 2005, July 13, 2005, and August 25, 2006, documents were wrong and that he advised Meigs of the error before signing any of the documents. Kirkland testified that he signed the July 8, 2005, documents even though he knew they were wrong because Meigs and Hinds “were in a big hurry to get it done.” Hinds also testified that he advised United Bank repeatedly that the signature lines on the documents were wrong and that United Bank instructed him and Kirkland to sign them anyway. Kirkland testified that in early 2007, on Bon Harbor’s behalf, he worked with a representative of United Bank to facilitate a correction of the August 25, 2006, documents. Kirkland testified that he advised the members of Bon Harbor to move forward with the correction, but Hinds, Herrick, Katz, and Vance — and through them Decatur and DGB — declined to do so because other disagreements with United Bank had arisen. This litigation followed.
 

 Hinds testified at his deposition regarding United Bank’s delay in transferring the $7,500,000 promised in the July 8, 2005, promissory note. Bon Harbor had purchased the property from Ray Jacob-sen. Jacobsen had acquired the property in several different parcels immediately before he sold it to Bon Harbor. Bon Harbor, Hinds testified, had placed $2,800,000 in escrow to pay closing costs and to fund $2,500,000 of the purchase price not funded by the $7,500,000 loan. Hinds explained that, based on United Bank’s assurances that the $7,500,000 would be transferred on July 8, 2005, Bon Harbor directed its closing agent that day to use the $2,800,000 in escrow to fund Jacobsen’s purchase of some of the several parcels of real estate that made up the property he later sold to Bon Harbor.
 

 The $7,500,000 was transferred to Bon Harbor in two installments — one on July 22, 2005, and a second on July 25, 2005. In the interim, on July 13, 2005, Bon Harbor obtained a smaller loan from United Bank in the amount of $2,200,000 to facilitate Jacobsen’s purchase of the remaining parcels that made up the property. On July 25, 2005, Bon Harbor closed its purchase of the property from Jacobsen. Bon Harbor used the $7,500,000 to pay off the $2,200,000 July 13, 2005, loan and to pay the remaining funds owed Jacobsen. Hinds testified that he understood that Bon Harbor had to pay more for the closing because these various transactions occurred over several days instead of as one transaction on July 8, 2005. He also testified that Bon Harbor, on Jacobsen’s behalf, paid one original landowner an additional $100,000 because of the delay.
 

 At his deposition, Hinds testified that he did not know whether Bon Harbor would have purchased the property had it known
 
 *90
 
 that the closing would not be completed until July 25, 2005. In a subsequent affidavit submitted with his motions, he testified that Bon Harbor would not have allowed expenditure of the $2,800,000 from escrow on July 8, 2005, and that he would not have guaranteed the loan, had they known that the $7,500,000 would not be transferred on that day.
 

 The $7,500,000 was transferred to Bon Harbor in two installments — $3,500,000 from United Bank and $4,000,000 from Hancock Bank. Hinds testified at his deposition that he did not know until July 9 or 10, 2005, that United Bank was not going to fund the entire $7,500,000 loan. In his affidavits, Hinds testified that he learned for the first time on July 11 or 12, 2005, that United Bank was not going to fund the entire loan and that the $4,000,000 eventually provided by Hancock Bank was originally supposed to have been provided by Trustmark Bank. United Bank presented a commitment letter dated July 6, 2005, signed by Hinds and Kirkland as “managing members” of Bon Harbor. That letter outlined the terms of the July 8, 2005, loan, stating, in part: “Loan Amount: up to $7,500,000 ...; United Bank is only committing to lend $3,500,000 of this amount. Hancock Bank, Gulfport, MS is expected to fund the remaining $4,000,000. United Bank is not committing to fund or carry on its books a loan in excess of $3,500,000.”
 

 Finally, to support their motion to vacate the March 20, 2008, judgment and their motions for a summary judgment, Bon Harbor and Hinds presented a letter dated January 24, 2007, from Banks, an employee of United Bank, to the closing agent of the various transactions with Bon Harbor. In that letter, Banks, on behalf of United Bank, stated:
 

 “Per our telephone conversation dated 01/23/07 this letter is to formally notify you of a problem with our documentation on the above referenced loan. An insured closing was held in your office on 07/08/2005 and policy was issued.
 

 “The Mortgage ... was signed incorrectly. It was signed by: Decatur, LLC and Gulf Stream Properties, Inc. These two entities are not authorized signers for Bon Harbor, LLG. The authorized signers should have been Michael F. Hinds, Managing Member and Paul Kirkland, Managing Member. This information can be found in the articles of organization which was stipulated in your closing commitment binder.
 

 “Your immediate attention to this matter is requested and notification of the correction in writing will be appreciated.”
 

 Bon Harbor and Hinds presented an affidavit from their counsel stating that Hinds did not receive the letter until after the trial court entered its March 20, 2008, summary judgment for United Bank. United Bank presented an affidavit from a paralegal employed by its counsel stating that he had produced the January 24, 2007, letter to Bon Harbor and Hinds’s counsel before the March 20, 2008, judgment, and even before Bon Harbor and Hinds responded to United Bank’s motion for a summary judgment.
 

 Analysis
 

 In their principal brief on appeal, Bon Harbor and Hinds argue that the trial court erred in entering a summary judgment against Hinds based on the guaranty he signed on August 25, 2006. Bon Harbor and Hinds also contend that the trial court erred in failing to consider the January 24, 2007, letter from Banks in deciding them motions to vacate and for a summary judgment; that the trial court erred in striking Hinds’s affidavits; and that the trial court erred in entering a summary
 
 *91
 
 judgment for United Bank and the third-party defendants on the counterclaims and third-party claims asserted against them.
 

 I.
 
 Hinds’s Liability as a Guarantor
 

 Hinds argues that the trial court erred in entering a summary judgment against him because, he argues, he is not liable on the August 25, 2006, guaranty (hereinafter “the guaranty”). Hinds reasons that the language of the guaranty extends Hinds’s liability only to written agreements between Bon Harbor and United Bank and that, because Bon Harbor’s signature of the underlying promissory note was defective, the guaranty does not secure any valid written agreements.
 

 “Our review of a summary judgment is de novo. ‘A motion for summary judgment is granted only when the evidence demonstrates that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P.’
 
 Reichert v. City of Mobile,
 
 776 So.2d 761, 764 (Ala.2000). We apply ‘the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact.’
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988);
 
 System Dynamics Int’l, Inc. v. Boykin,
 
 683 So.2d 419, 420 (Ala.1996). In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).”
 

 Borders v. City of Huntsville,
 
 875 So.2d 1168, 1176-77 (Ala.2003). “ ‘In the present case, the plaintiff asked for and was granted a summary judgment. On a motion for an offensive summary judgment, that is, one on behalf of the plaintiff, the plaintiff must conclusively prove every element of his claim.’ ”
 
 Ex parte Ramsay,
 
 829 So.2d 146, 153 (Ala.2002) (quoting
 
 Ramsay v. Grove Hill Mem’l Hosp. Auxiliary,
 
 829 So.2d 142, 144-45 (Ala.Civ.App.2000)).
 

 Additionally, we note that “ ‘[questions of law are reviewed de novo.’ ”
 
 Henderson v. MeadWestvaco Corp.,
 
 23 So.3d 625, 629 (Ala.2009) (quoting
 
 Alabama Elec. Coop. v. Bailey’s Constr. Co.,
 
 950 So.2d 280, 283 (Ala.2006)). “As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law.”
 
 Winkleblack v. Murphy,
 
 811 So.2d 521, 525-26 (Ala.2001) (citing
 
 Commercial Credit Corp. v. Leggett,
 
 744 So.2d 890 (Ala.1999)).
 

 In their principal brief on appeal, Bon Harbor and Hinds state the following regarding Bon Harbor’s indebtedness to United Bank:
 

 “Bon Harbor recognizes that it may not accept the proceeds from United [Bank] and then claim that it bears no liability to repay it on the ground that it did not execute the loan documents. The company acknowledges that the money received from United [Bank] was not a gift, and expected to pay a reasonable rate of interest for the use of the money. Bon Harbor does not claim that the rate of interest provided for in the loan documents was unreasonable. However, it did not enter into the loan documents presented by United [Bank], or any other written agreement, and is therefore not bound according to the terms of those documents.”
 

 (Bon Harbor and Hinds’s brief, at 44.)
 

 The guaranty stated:
 

 
 *92
 
 “Guarantor hereby unconditionally guarantees the prompt and full payment and performance and promises to pay all of [Bon Harbor’s] present and future, joint and/or several, direct and indirect, absolute and contingent,
 
 express and implied,
 
 indebtedness, liabilities, obligations and covenants (cumulatively ‘indebtedness’) to [United Bank]
 
 as follows :
 

 “X UNLIMITED: Guarantor’s liabilities and obligations under this guaranty (‘obligations’) shall be unlimited and
 
 shall include, all present and future mitten agreements between [Bon Harbor] and [United Bank]
 
 (whether executed for the same or different purposes) including, but not limited to, the [July 8, 2005,] promissory notes and agreements ... evidencing the indebtedness, together with all interest and all of [United Bank’s] expenses and costs.... ”
 

 (Emphasis added.) Hinds argues that the scope of his liability under the guaranty cannot be extended beyond the language of the guaranty. He cites § 8-9-2(3), Ala. Code 1975, which requires that promises “to answer for the debt, default or miscarriage of another” be in writing. He also relies on several cases stating that guaranty agreements must be strictly construed.
 
 [3]
 
 Hinds then reasons that the phrase “shall include, all present and future written agreements” limits his liability under the guaranty to “express and implied[ ] indebtedness, liabilities, obligations and covenants,”
 
 arising from written agreements.
 

 United Bank contends that the phrase “shall include, all present and future written agreements” is not limiting in nature. United Bank notes that the preceding paragraph provides that Hinds guarantees the “express
 
 and implied,
 
 indebtedness, liabilities, obligations and covenants” between Bon Harbor and United Bank. (Emphasis added.) United Bank then argues that the words “shall include” are not limiting in nature, but are rather words of enlargement, citing
 
 Southeastern Meats of Pelham, Inc. v. City of Birmingham,
 
 895 So.2d 909 (Ala.2004). United Bank then notes that the guaranty agreement contained three possible paragraphs describing the scope of the guaranty: unlimited, limited to an amount, and limited to specified agreements. Hinds and United Bank
 
 *93
 
 selected the first paragraph. United Bank argues that, if the parties had wanted to limit the guaranty to written agreements, they could have selected the third option and expressly limited the guaranty to written agreements between Bon Harbor and United Bank. Instead, the parties chose the fmst option which stated instead that the guaranty “shall be unlimited.”
 

 We agree with United Bank’s construction of the guaranty. In
 
 Southeastern Meats,
 
 this Court stated:
 

 “In another context, this Court explained that the word ‘ “including” is
 
 not to be regarded as limitational or restrictive,
 
 but merely as a particular specification of something to be included or to constitute a part of some
 
 other
 
 thing.’
 
 Sims v. Moore,
 
 288 Ala. 630, 635, 264 So.2d 484, 487 (1972) (emphasis added). ‘ “Including” is
 
 not
 
 a word of limitation, rather it is a word of
 
 enlargement,
 
 and in ordinary significance also may imply that
 
 something else has been given beyond the general language which precedes it. ’ Id.
 
 (emphasis added).”
 

 895 So.2d at 913. Therefore, the phrase “shall
 
 include ...
 
 written agreements” (emphasis added) cannot reasonably be read as limiting or restricting the scope of the guaranty. This is true particularly considering the immediately preceding phrase, which states that the guaranty “shall be unlimited,” and considering the alternative choices that would have allowed the parties to specify that the guaranty was limited to certain agreements.
 

 Accordingly, Hinds was liable under the guaranty for Bon Harbor’s indebtedness, express and implied, written or otherwise, to United Bank. Based on the previously noted admission of liability of Bon Harbor, Bon Harbor is indebted to United Bank for the $7,500,000 transferred to it in July 2005 and for reasonable interest on that debt. As a result, United Bank has shown that there is no genuine issue as to any material fact regarding Hinds’s liability under the guaranty for Bon Harbor’s indebtedness to United Bank and that it is entitled to a judgment as a matter of law. The absence of proper signatures obviously does not afford a defense to Bon Harbor’s indebtedness or Bon Harbor and Hinds would not concede Bon Harbor’s liability in their principal brief on appeal. Given the scope of the guaranty as it relates to implied liabilities of Bon Harbor, we need not further address the implications of the absence of alleged proper signatures. Hinds, therefore, has not shown that the trial court erred in entering a summary judgment against him.
 

 II.
 
 Newly Discovered Evidence
 

 Bon Harbor and Hinds next argue that the trial court erred in failing to grant their motion to set aside the March 20, 2008, judgment and their motions for a summary judgment based on newly discovered evidence, i.e., the January 24, 2007, letter from Banks. Specifically, they contend that the March 20, 2008, order was interlocutory and, therefore, that the trial court had discretion to reconsider the judgment in light of the new evidence. Citing
 
 Simmons Machinery Co. v. M & M Brokerage, Inc.,
 
 409 So.2d 743, 759 (Ala.1981), Bon Harbor and Hinds characterize the January 24, 2007, letter as an admission by United Bank of the ultimate fact at issue in the case, and they argue that the trial court’s decision not to consider it was arbitrary. Bon Harbor and Hinds argue, based on the affidavit of their counsel, that they did not discover the letter before the entry of the March 20, 2008, judgment. They also argue, without citation to authority, that the trial court was “obligated” to consider it with respect to their motion for a summary judgment. (Bon Harbor and Hinds’s brief, at 49.)
 

 
 *94
 
 United Bank argues that the trial court did not exceed its discretion in deciding not to consider the January 24, 2007, letter. United .Bank contends that the letter does not add any material facts that were not already before the trial court in considering United Bank’s motion and that Bon Harbor and Hinds did not raise any new arguments based on the letter. As noted above, Bon Harbor has conceded liability regarding its indebtedness to United Bank, and Hinds’s guaranty applies to both the express and implied indebtedness of Bon Harbor. As a result, evidence regarding Bon Harbor’s liability on the promissory notes is immaterial.
 

 Additionally, based on the affidavit from its counsel’s paralegal, United Bank argues that Bon Harbor and Hinds had the letter in their possession before they responded to United Bank’s motion and before the trial court entered the summary judgment on March 20, 2008. Accordingly, United Bank argues, Bon Harbor and Hinds have not proffered any explanation for their failure to submit the letter sooner. They cite
 
 Hail v. Regency Terrace Owners Ass’n,
 
 782 So.2d 1271, 1278 (Ala.1999). The parties correctly agree that the trial court had discretion whether to consider the January 24, 2007, letter. See
 
 Simmons Machinery,
 
 409 So.2d at 759 (“Credit Alliance correctly argues that the partial summary judgment rendered by the trial court was subject to revision at any time before the entry of judgment adjudicating all the parties’ claims, rights, and liabilities, under Rule 54(b), [Ala. R. Civ. P.]. Although it is true that the partial summary judgment in this case was subject to revision ..., such revision was not mandatory upon the trial court.... Whether a trial court revises a partial grant of summary judgment ... is a matter of discretion which, absent an abuse, we will not disturb.”). In
 
 Hail,
 
 in considering a trial court’s decision to strike affidavits submitted in opposition to a partial, and therefore interlocutory, summary judgment, this Court stated:
 

 “The factors a court is to consider on the question whether to revise an interlocutory summary judgment are analogous to those it is to consider when a party attempts to offer new evidence in support of a motion under Rule 59(e)[, Ala. R. Civ. P.].
 
 Thomas v. Swindle,
 
 676 So.2d 333, 335 (Ala.Civ.App.1996). Evidence submitted in an effort to revise an interlocutory summary judgment can be considered by the court if the nonmov-ant can offer a proper explanation for its failure to submit the evidence earlier, in response to the motion for summary judgment.
 
 Id.,
 
 at 335, citing
 
 Moore v. Glover,
 
 501 So.2d [1187,] 1189 [(Ala.1986) ].”
 

 782 So.2d at 1278.
 

 Based on the affidavit presented by United Bank, the trial court could have concluded that the letter was available to Bon Harbor and Hinds before they responded to United Bank’s motion for a summary judgment and before the trial court entered its March 20, 2008, order. Therefore, the trial court could have concluded that Bon Harbor and Hinds did not “offer a proper explanation for its failure to submit the evidence earlier, in response to the motion for summary judgment.”
 
 Hail,
 
 782 So.2d at 1278. Accordingly, the trial court did not exceed its discretion in deciding not to consider Bon Harbor and Hinds’s motions based on the January 24, 2007, letter.
 

 III.
 
 Hinds’s Affidavits
 

 Bon Harbor and Hinds argue that the trial court erred in striking Hinds’s affidavits submitted in support of their motion to vacate, motions for a summary judgment, and response to United Bank
 
 *95
 
 and the third-party defendants’ motion for a summary judgment. However, Bon Harbor and Hinds do not cite any authority to support their arguments on this issue. This Court has stated:
 

 “Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ Further, ‘it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding • those arguments.’
 
 State Farm Mut. Auto. Ins. Co. v. Motley,
 
 909 So.2d 806, 822 (Ala.2005) (citing
 
 Ex parte Showers,
 
 812 So.2d 277, 281 (Ala.2001)). This is so, because ‘
 
 “it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.”
 
 ’
 
 Butler v. Town of Argo,
 
 871 So.2d 1, 20 (Ala.2003) (quoting
 
 Dykes v. Lane Trucking, Inc.,
 
 652 So.2d 248, 251 (Ala.1994)).”
 

 Jimmy Day Plumbing & Heating, Inc. v. Smith,
 
 964 So.2d 1, 9 (Ala.2007) (emphasis added). Because Bon Harbor and Hinds have not complied with the requirements of Rule 28(a)(10), Ala. R. Civ. P., we will not consider their arguments as to this issue.
 

 IV.
 
 The Counterclaims and Third-Party Claims
 

 Bon Harbor and Hinds argue that the trial court erred in entering a summary judgment for United Bank and the third-party defendants on their claims of breach of duty, fraud, and suppression, and for a declaratory judgment because, they say, genuine issues of material fact existed as to those claims. In their principal brief on appeal, Bon Harbor and Hinds argue generally and do not specify arguments relating to each of their four claims. They do not cite to any authority except for the proposition that “[o]nce a fraud has been accomplished, subsequent actions cannot completely erase the injury done to the person against whom the fraud was committed.”
 
 Boswell v. Liberty Nat’l Life Ins. Co.,
 
 643 So.2d 580, 584 (Ala.1994). Also
 
 citing-Spooner v. State Farm Mut. Auto. Ins. Co.,
 
 709 So.2d 1157 (Ala.1997);
 
 Soutullo v. Commonwealth Land Title Ins. Co.,
 
 646 So.2d 1352 (Ala.1994); and
 
 Old Southern Life Ins. Co. v. Woodall,
 
 348 So.2d 1377 (Ala.1977), Bon Harbor and Hinds argue only that their claims are “analogous” to the situations presented in these cases; that a “substantial wrong occurred on July 8, 2005,” and that United Bank cannot undo it; and that the “facts relating to the fraudulent failure to make the loan on July 8th” must be taken as true. Bon Harbor and Hinds do not state any arguments regarding how the authority they cite relates to their claims of breach of duty, fraud, and suppression, and for a declaratory judgment. Nor do they show how the authority relates to a finding that genuine issues of material fact exist as to the elements of those claims. As stated above, “ ‘ “it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ’ ”
 
 Jimmy Day Plumbing,
 
 964 So.2d at 9. Bon Harbor and Hinds have not complied with the requirements of Rule 28(a)(10), Ala. R.App. P., with respect to this argument. Accordingly, Bon Harbor and Hinds have not shown that the trial court erred in entering a summary judgment for United Bank and the third-party defendants on their counterclaims and third-party claims.
 

 
 *96
 
 Based on the foregoing, we affirm the trial court’s judgment in favor of United Bank, Banks, Meigs, and Lipham and against Bon Harbor and Hinds.
 

 AFFIRMED.
 

 COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 [1]
 

 . Bon Harbor and Hinds also amended their counterclaim and third-party complaint to state a claim for a rescission and to assert additional fraud-based claims. United Bank and the third-party defendants moved to strike the amendment as untimely. The trial court granted the motion. Bon Harbor and Hinds have not raised any arguments on appeal regarding the trial court's dismissal of their amended counterclaim and third-party complaint.
 

 [2]
 

 . The trial court’s judgment also named Herrick, Katz, and Vance as defendants. However, the claims against those defendants had previously been dismissed.
 

 [3]
 

 . Hinds cites
 
 Miller v. Stewart,
 
 22 U.S. (9 Wheat.) 680, 702-03, 6 L.Ed. 189 (1824) (“Nothing can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no farther. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made it is fatal.”);
 
 Medley v. South-Trust Bank,
 
 500 So.2d 1075, 1081 (Ala.1986) ("It is fundamental that, the liability of a guarantor will not be extended by implication beyond the terms of his contract. It matters not that he or she sustains no injury or even that it may be for his or her benefit. This Court has said that the guarantor 'has a right to stand upon the very terms of his contract, and if the does not assent to any variation of it, and a variation is made it is fatal.'
 
 Russell v. Garrett,
 
 208 Ala. 92, 96-97, 93 So. 711 (1922), quoting
 
 Manatee County State Bank v. Weatherly,
 
 144 Ala. 655, 39 So. 988 (1905).”);
 
 McGeever v. Terre Haute Brewing Co.,
 
 201 Ala. 290, 292, 78 So. 66, 68 (1918) ("It is settled in this jurisdiction that the contract of a guarantor must be strictly construed, according to the letter of the undertaking.”);
 
 Manatee County State Bank v. Weatherly,
 
 144 Ala. 655, 658, 39 So. 988, 988-89 (1905) ("The rule seems to be well settled in this state that the contract of a surety or guarantor must be strictly construed according to the letter of the undertaking. The surety has a right to stand upon the terms of his contract, and it cannot without his assent be changed in any respect. To the extent and in the manner stated in his contract he is bound, and no further.”).